Jonathan G. KING, and Sarah S. King, Plaintiffs,

v.

The TOWNSHIP OF EAST LAMPETER, John W. Shertzer, individually and in his official capacity, Glenn L. Eberly, individually and in his official capacity, Wil Sollenberger, individually and in his official capacity, J. Jacob Bare, individually and in his official capacity, Mike Landis, individually and in his official capacity, Ralph M. Hutchison, individually and in his official capacity, Zoning Hearing Board, Ralph A. Hendershott, individually and in his official capacity, Russell E. Latschar, individually and in his official capacity, Dale Schmitz, individually and in his official capacity, R. Lee Young, individually and in his official capacity, and Tammy Lantz, Defendants.

Civil Action No. 97–CV–5034.

United States District Court, E.D. Pennsylvania.

Aug. 13, 1998.

James W. Harris, Caleb Nichols, York, PA, for Plaintiffs.

Elizabeth A. Hambrick–Stowe, Lancaster, PA, Frank J. Lavery, Jr., Harrisburg, PA, for Defendants.

### OPINION AND ORDER

VAN ANTWERPEN, District Judge.

## I. INTRODUCTION

Jonathan and Sarah King have asserted several claims against the Defendants under both state and federal law. The circumstances under which these claims arise involve a long and often abrasive relationship between the Plaintiffs and the Township of East Lampeter (the "Township") and several of its officials. Defendant Lantz is the only individual Defendant who is not affiliated with the Township in some official capacity. She is represented by separate council and has filed her own motion for summary judgment. The remaining Defendants have also filed a motion for summary judgment, attacking the Plaintiffs' claims on their merits and asserting several affirmative defenses. The Plaintiffs have filed their own motion for summary judgment, and have opposed the motions filed by the Defendants. We note that jurisdiction in this matter is appropriate under 28 U.S.C. §§ 1331 and 1367.

Apart from the summary judgment motions, we must also consider two other motions which have been submitted by the parties. First, we must address a joint motion to strike submitted by the Defendants. This motion seeks to strike the Plaintiffs' summary judgment motion and brief in opposition to the Defendants' motions, because they are allegedly untimely. Second, we must consider the Plaintiffs' motion for leave to amend their complaint by adding two additional defendants. This motion is opposed by all of the Defendants. We will address these preliminary matters before moving on to the issue of summary judgment.[1]

## II. BACKGROUND

### A. Relevant Facts

Summaries of the relevant facts have been prepared by each of the parties. The Township and Township officials have submitted a Statement of Facts consisting of 127 numbered paragraphs. Defendant Lantz concurs with and briefly supplements the Statement of Facts submitted by these Defendants.

---

1. We wish to note that Plaintiffs' counsel has, for the most part, failed to reference the arguments in his memoranda and briefs to relevant portions of the record. This failure has made the process of deciding the motions more tedious than it need have been. Nevertheless, we have undertaken a careful review of all exhibits submitted by the parties in an effort to identify any and all relevant supporting evidence for the Plaintiffs' claims, and we feel that Plaintiffs' counsel's submissions are sufficient to allow us to rule on all of the motions before this court.

The Plaintiffs have not responded to the numbered paragraphs individually, and have instead prepared their own narrative summary of the facts.

On balance, the Defendants' summary is the most helpful. The Plaintiffs have failed to cite the relevant portions of the record which support their narrative. Nevertheless, we have reviewed the voluminous exhibits submitted by all of the parties. Having done so, we find that the following summary presents an accurate depiction of the individuals, events, and conduct relevant to this dispute.

### 1. The Plaintiffs

Nearly nine years before the first zoning ordinance was enacted by the Township, the Plaintiffs began operating a woodworking shop in Whitmer, East Lampeter Township. Plaintiffs' Exhibit N.

Later, a Charter was obtained by the Plaintiffs on October 25, 1966, and the Whitmer Co. was incorporated to operate under the laws of Pennsylvania. By virtue of its corporate charter, the company was vested with broad and inclusive powers to manufacture and sell complete kitchens, billiard tables, specialty millwork, cabinets, and woodworking, along with all powers incident thereto. Plaintiffs' Exhibit B.

Other than selling off some of the furniture which was already being stored on the property when a court enjoined the Plaintiffs from doing business, Mr. King testified that he retired from the furniture and woodworking business at the end of 1996. Deposition of Jonathan G. King, taken April 2, 1998 ("King Dep.") at 8–9, 14.

Very little is said about Mrs. King in the record. It does not appear that she has an ownership interest in her husband's business, see Deposition of Tammy Lantz, taken May 4, 1998 ("Lantz Dep.") Exhibit 1, nor has her deposition been taken by any of the Defendants.

### 2. The Township Defendants

East Lampeter's Township Manager is Ralph M. Hutchison. Defendant Hutchison has served in this capacity since December 1, 1991. Defendants' Exhibit H.

Several members of the Township's Board of Supervisors have also been named as Defendants. John W. Shertzer currently serves as Chairman of the Board of Supervisors, and Glenn L. Eberly currently serves as Vice–Chairman of the Board of Supervisors. Wil Sollenberger, J. Jacob Bare, and Mike Landis are the remaining current members of the Board of Supervisors. Defendants' Exhibit A.

Little information is provided about Ralph A. Hendershott in the record. Defendant Hendershott currently chairs the Zoning Board of the Township. Id.

Until August of 1997, Russell E. Latschar served as the Zoning Officer for the Township. Defendant Latschar currently serves as the Secretary of the Zoning Hearing Board. In his capacity as Zoning Officer, Defendant Latschar would from time to time photograph properties and conditions which he believed to be in violation of local zoning ordinances. Defendants' Exhibit G.

Also named as a Defendant in the suit is Dale Schmitz, who is currently a member of the Zoning Hearing Board of the Township. Defendants' Exhibit A.

Next in the line of Defendants is R. Lee Young, who is currently the Zoning Officer of the Zoning Hearing Board. Defendant Young was formerly the Secretary of the Township's Zoning Hearing Board. Id.

All of the above Defendants are now, or have previously been affiliated with the Township in some official capacity. For the sake of convenience, this Court will refer to the Defendant Township, Defendant Zoning Hearing Board, and the individual Defendants named above as the "Township Defendants."

### 3. Defendant Lantz

Defendant Tammy Lantz lived across the street from the Plaintiffs at 427 Mount Sidney Road, Township of East Lampeter, from April 1990 until approximately August 1997. Plaintiffs' Exhibit P at 4–5.

From the Spring of 1994 until June of 1995, Defendant Lantz took photographs of the Plaintiffs' property either from Ms.

Lantz's property or from a public road running along the southern boundary of the Plaintiffs' property. Lantz's Exhibit 2 ¶ 6.

Photographs taken by Defendant Lantz were admitted into evidence on September 26, 1996, during a hearing in the Lancaster County Court of Common Pleas where Defendant Lantz testified about the condition of the Plaintiffs' property. *Id.*

None of the photographs taken by Defendant Lantz show people. Lantz's Exhibit 2 ¶ 7.

Defendant Lantz was not compensated for taking any of the aforementioned photographs. At one time someone from the Township may have offered to reimburse her for the price of the film and the cost of developing the film, but any such offer was rejected by Defendant Lantz. Lantz's Exhibit 2 ¶ 9.

When Defendant Lantz learned that the Township was bringing legal proceedings against the Plaintiffs for alleged zoning violations, she volunteered to testify against the Plaintiffs. Lantz's Exhibit 2 ¶ 10.

At the time she volunteered to testify, Defendant Lantz believed that the Plaintiffs were in violation of zoning regulations because of a commercial sign which was displayed on the Plaintiffs' property. *Id.*

#### 4. The Property

The property involved in this suit is located in East Lampeter Township, at 428 and 430 Mt. Sidney Road. King Dep. at 9–11.

There are three structures on the property, including a house, an office building, and a woodworking shop (also referred to as the "mill building"). *See* Defendant Lantz's Exhibit 2(A). The address of the house is 428 Mt. Sidney Road, the address of the office is 430 Mt. Sidney Road, and the mill building straddles both tracts. King Dep. at 194.

The office building has been used to store and display furniture. *See* King Dep. at 23–24.

At various times a sign reading "Whitmer Furniture Co., Inc." has been displayed in the office building, and a sign reading "Whole Sale Furniture, Distributor Manufacturer, Lowest Prices Around, 400 Bedroom Suites, 200 Dining Room Suites, 500 Living Room Suites" has been propped near the road, between the office building and home. *See e.g.,* Defendant Lantz's Exhibit 2(B) at 9, 12, 13.

#### 5. Relationship Between the Plaintiffs and the Township

In approximately 1970, the Township adopted its first zoning ordinance (the "Zoning Ordinance"), and the Plaintiffs' business operation became a nonconforming use in an R–2 (residential) zoning district. *See* Complaint at 6; King Dep. at 24.

On September 3, 1971, the Plaintiffs claim to have been granted a special exception to expand the mill building, subject to certain conditions, including "that no outside storage would be permitted which would detract from the appearance of the neighborhood." *See* Complaint at 6; King Dep. at 36.

Subsequently, the Plaintiff applied for a special exception regarding an addition to the mill building. This addition had been partially built prior to the request, and the Plaintiffs' request was denied by the Township's Zoning Hearing Board. On June 21, 1976, Judge Paul A. Mueller, Jr. of the Court of Common Pleas [2] affirmed the Zoning Hearing Board. Judge Mueller issued an order directing the Plaintiffs to remove construction which was begun prior to the ruling. King Dep. Exhibit 2.

The Plaintiffs appealed the June 21, 1976 order, but the appeal was dismissed by the Commonwealth Court due to the failure of the Plaintiffs' attorney to file their briefs. King Dep. at 53.

The Plaintiffs allege that the Township later filed a petition for contempt citation because of the Plaintiffs' failure to comply with the June 21, 1976 order.

---

**2.** Although we appreciate the pleasant connotations brought to mind by the title "Court of Common Please," we feel obliged to point out to Plaintiffs' counsel that the proper title of that court is the "Court of Common Pleas."

On October 12, 1977, an order was entered dismissing the contempt citation by agreement of the parties, conditioned upon the fulfillment of certain conditions by the Plaintiffs, namely "removal of that part of a buggy shed known as the penthouse, and to use that area for parking motor vehicles and the storage of materials." This order was signed by Mr. King, Judge Mueller, Deputy Prothonotary Dorothy Greenawalt and Defendant Hendershott, who was on the Zoning Hearing Board at the time. King Dep. Exhibit 3.

In November of 1977, the Township allegedly filed another petition for contempt citation on the basis of alleged violations of the October 12, 1977 order.

On January 3, 1978, Judge Mueller issued another order advising the Plaintiffs to comply with the order and agreement of October 12, 1977 by February 6, 1978, or face being found guilty of contempt. King Dep. Exhibit 4.

On February 6, 1978, Judge Mueller found that the Plaintiffs had violated the October 12, 1977 order, and found the Plaintiffs guilty of civil contempt.

> [The] Court wishes to make clear to Mr. King as well as Mrs. King at this time that it will not tolerate further attempts at partial compliance or last minute efforts by Mr. King just before May 1, 1978. Either the addition with the three openings for garage doors and the west end which is not completely constructed with cinder block has to be completely torn down or completely finished by May 1, 1978.

> Jonathan G. King's contemptuous conduct displays a stubborn disregard for the authority of this Court which is both wilful [sic] and intentional. He appears to be asking the Court to hold him in contempt. Under the circumstances, Mr. King, the Court so finds.

King Dep. Exhibit 5.

The Plaintiffs allege that Judge Mueller, by supplemental order filed February 23, 1978, granted them six hours parking time, rather than two, for temporary loading and unloading. However, the Plaintiffs cite no evidence for this contention, and although an order was filed on that date, no such accommodation exists on the face of the order itself. Therefore, we will not accept this allegation. *See* King Dep. Exhibit 6.

In August of 1979, a third petition for contempt citation was allegedly filed by the Township concerning violations of the October 12, 1977 and February 6, 1978 orders.

On October 1, 1979, Judge Mueller found Mr. King guilty of civil contempt and ordered him imprisoned until he purged his contempt by complying with the order of the court. King Dep. Exhibit 7.

Commencing on October 1, 1979, Mr. King was incarcerated for four days and four nights. He was released on October 5, 1979. *See* King Dep. at 60–62.

The October 1, 1979 order amended a portion of the October 12, 1977 order to read: "the open area recently created by the removal of a building erected by Defendants situated at the southwest corner of Defendant's premises may be used for the storage of materials and the parking of currently licensed motor vehicles." King Dep. Exhibit 7.

The Plaintiffs allege that proceedings were instituted against them by the Township in 1988 and 1989. However, the Plaintiffs fail to provide specific evidence in support of this contention.

On or about February 6, 1991, a fourth petition for contempt citation was filed by the Township, alleging violations of court orders dated October 12, 1977, February 7, 1978, and October 1, 1979.

On April 9, 1991, Senior Judge Wilson Bucher of the Court of Common Pleas found the Plaintiffs in contempt of court and ordered them to remove trash, debris, and unlicensed vehicles from their property. The Plaintiffs were also fined $2,500 and ordered to pay the Township's attorney's fees and costs. The order provided that this penalty would be nullified if the Plaintiffs complied with the remainder of the order prior to May 15, 1991. King Dep. Exhibit 10.

The Plaintiffs appealed Judge Bucher's order, and on August 7, 1992, the Commonwealth Court affirmed the order. King Dep. Exhibit 11.

The Plaintiffs allege that on June 9, 1991, after the April 19, 1991 order had been issued, the Township, under the direction of Ivan Miller, a member of the Board of Supervisors, entered the Plaintiffs' property and seized trailers, vehicles, and equipment. The Plaintiffs also allege that the Township has made no accounting for this property. However, the Plaintiffs fail to cite any portion of the record in support of this proposition.

On June 6, 1995, Defendant Latschar issued an enforcement notice to the Plaintiffs, citing zoning violations which included the unauthorized change of a nonconforming use, the sale of merchandise not manufactured on the property, off street loading and unloading, and the display of oversized business signs. The notice stated that compliance must be completed on or before June 30, 1995 and described the penalties which would accompany failure to comply. King Dep. Exhibit 12.

On or about June 9, 1995, the Township filed a motion with the Court of Common Pleas requesting injunctive relief. On June 14, 1995, the court scheduled a hearing for June 27, 1995. King Dep. Exhibit 13.

On September 28, 1995, the Pennsylvania Human Rights Commission rendered a finding of no probable cause regarding a complaint filed by the Plaintiffs and their youngest son in September 1995. This complaint contained many allegations of discrimination, many of which are similar to those in this case. Defendants' Exhibits D and E.

In the Fall of 1995, the Plaintiffs filed a Request for a Special Exception to a zoning ordinance. A hearing on the matter was scheduled for November 9, 1995. King Dep. Exhibit 18. The Plaintiffs chose not to attend the meeting, although their attorney did appear and requested a postponement. The hearing was postponed, but neither the Plaintiffs nor their attorney showed up for the rescheduled hearing. It appears that the plaintiffs took no additional steps to pursue the matter of the special exception. *See* King Dep. at 143–144.

On September 26, 1996 and December 20, 1996, hearings regarding the enforcement notice were held before Judge Lawrence Stengel of the Court of Common Pleas. King Dep. Exhibits 14 and 15. A series of photographs were entered into evidence during the injunction proceeding.

By a Decree Nisi, dated June 27, 1997, Judge Stengel permanently enjoined the Plaintiffs from continuing their business, and ordered that they remove certain accessory structures and facilities located on the southwest corner of the property, discontinue the display of merchandise, remove all outside storage, and pay certain fines and legal fees. On or about October 23, 1997, Judge Stengel issued a Final Decree incorporating the terms of the Decree Nisi. King Dep. Exhibit 17.

The Plaintiffs appealed Judge Stengel's decree to the Commonwealth Court on April 2, 1998. *See* King Dep. at 141–142. This appeal remains pending as of the date of this Opinion and Order.

## 6. The Plaintiffs' Religious Affiliation

The Defendants have introduced evidence that Mr. King left the Old Order Amish Church in 1969, and has not been a member of the Old Order Amish Church since that time. Defendants' Exhibit F.

Mr. King recalls that he became disassociated with the Church sometime around 1980. King Dep. at 153.

Mr. King has also testified that he and his wife have "always considered ourselves members of the Amish faith, by religion, conviction, ethnicity and traditions." Affidavit of Jonathan G. King, dated June 10, 1998 ("King Affidavit") at 5.

## 7. Alleged Personal Animus

Mr. King testified that John Kershner did not like the Plaintiffs. This impression is based upon the fact that Mr. Kershner testified against the Plaintiffs in 1991. King Dep. at 177–179. We note that Mr. Kershner is not a defendant in this case.

Mr. King has testified that Linda Ziegler also bore some sort of personal animus against the Plaintiffs. Again, this impression was based upon the fact that Ms. Ziegler testified against the Plaintiffs in 1991. King

Dep. at 177–180. We note that Ms. Ziegler is not a defendant in this case.

Mr. King has testified that Frances Linetti, who also testified against the Plaintiffs in 1991, bore some personal animus against the Plaintiffs. King Dep. at 180. We note that this individual is not a defendant in this case.

Mr. King has testified that Russell Latschar held a grudge against him, allegedly due to the fact that Mr. Latschar and Mr. King were on opposites side of a debate which took place at some point in the 1970s regarding how the local fire company should be run. King Dep. at 181–182.

Mr. King has testified that the Township Supervisors harbor some personal animus against the Plaintiffs. Mr. King bases this belief upon the fact that the Supervisors have, at various times, authorized legal proceedings against the Plaintiffs. King Dep. at 182.

**8. Alleged Disparate Treatment**

Mr. King has alleged that Robert Flory is a similarly situated person who was treated differently than the Plaintiffs. Mr. King testified that Mr. Flory's farm was in a rural area and was zoned commercial. King Dep. at 183–186.

Defendant Hutchison, the current Township Manager, has stated that prior to the 1990s, Mr. Flory operated a tourist business known as the "Amish Homestead." Mr. Flory's property was zoned partially commercial and partially high density residential. Mr. Flory subdivided the property years ago and sold a portion of the commercially zoned property to Wal–Mart. *See* Defendants' Exhibit H at 5.

Mr. King has also alleged that Robert Dye is a similarly situated person who was treated differently than the Plaintiffs. Mr. King testified that Mr. Dye's concrete business was zoned commercial even though it was in the middle of a housing development. King Dep. at 187–188.

Defendant Hutchison has stated that Mr. Dye once owned a concrete pipe business which pre-existed the initial Zoning Ordinance, and was, therefore, a permissible nonconforming use. Defendant Hutchison also stated that the business has since closed, and that Mr. Dye's personal residence was at all times located elsewhere. Defendants' Exhibit H at 5.

Mr. King has also testified that Ralph Hendershott is a similarly situated person who was treated differently than the Plaintiffs. Mr. King testified that Mr. Hendershott's printing shop is located in a residential area. King Dep. at 188–189.

Defendant Hutchison has stated that Defendant Hendershott does have a printing business on his property, which is in a rural zone. This business also pre-existed the 1970 zoning ordinance and is, therefore, a permissible nonconforming use. Defendant Hutchison also testified that while this printing business expanded its nonconforming use after 1970, this was accomplished by following proper procedure, which included filing an application for a special exception and participating in scheduled hearings. Defendants' Exhibit H at 5–6.

When asked to identify any Amish-owned business which has been the subject of discrimination by the Township, the Plaintiffs stated in their Answers to Interrogatories, "We have no personal knowledge of such." Defendants' Exhibit C, No. 14.

**9. Other Relevant Facts**

Mr. King acknowledges that he has no evidence, other than that related to the claims against Ms. Lantz, of any individual being involved in a conspiracy with the Township and its officials against the Plaintiffs. King Dep. at 167–170.

Defendants Hutchison and Latschar have testified that the condition of the Plaintiffs' property posed a threat to the public health, safety and welfare of East Lampeter Township. See Defendants' Exhibits G and H.

**B. Procedural History**

On August 6, 1997, the Plaintiffs filed a complaint with this court which apparently was never served upon any of the Defendants. *See* Defendants' Exhibit I. On October 15, 1997, the Plaintiffs filed an Amended Complaint (the "Complaint") against all of

the Defendants, alleging violations of state and federal laws.

On December 3, the Township Defendants and Defendant Lantz each filed a motion to dismiss under Fed.R.Civ.P. 12(b)(6). On December 23, 1997, this Court entered an order extending the time for the Plaintiffs to respond to the motions. On January 15, 1998, the Plaintiffs filed briefs in opposition, and on January 22, 1998, this Court denied the Defendants' motions and directed that discovery be conducted on an expedited·basis.

On May 8, 1998, the Township Defendants filed their summary judgment motion. Defendant Lantz filed her summary judgment motion on May 27, 1998. The Plaintiffs filed their own motion for summary judgment on June 8, 1998. The Plaintiffs supplemented this motion with a brief opposing the Defendants' motions and supporting their own motion on June 11, 1998. The Defendants jointly filed a motion to strike on June 17, 1998, claiming that the Plaintiffs' response to the Township's motion was untimely. The Plaintiffs moved to strike the motion to strike on June 22, 1998. On June 29, 1998, Defendant Lantz filed her reply to the Plaintiffs' summary judgment motion. The Township Defendants filed their response on the same day. On July 2, 1998, the Township Defendants filed what was effectively (good heavens!) a motion to strike the motion to strike the motion to strike.[3] The Plaintiffs filed a supplemental brief opposing the Defendants' summary judgment motions and supporting their own motion on July 13, 1998.

On June 30, 1998, the Plaintiffs filed a Motion for Leave to Amend Complaint to Join Additional Parties. The Township Defendants opposed this motion on July 9, 1998, and the Plaintiffs filed a reply brief on July 20, 1998. The Township Defendants filed a supplemental memorandum in opposition on July 22, 1998. Defendant Lantz sought leave to join the Township Defendants' motion on July 31, 1998.

We are troubled by the multitude of responses and sur-replies which have been filed in this case. The Local Rules of Civil Procedure, which apply to all civil actions in this District, require that supplemental briefs and memoranda are to be filed only with the approval or at the request of the court. Local R. Civ. P. 7.1(c). The attorneys for both the Plaintiffs and the Defendants have ignored this rule on multiple occasions, and we counsel them to pay more careful attention to the Local Rules of Civil Procedure in the future.

## III. DISCUSSION

Before we consider the arguments advanced by the Defendants in their motions for summary judgment, we must resolve issues raised by the Defendants' joint motion to strike. We will then address the Plaintiffs' motion for leave to amend the complaint to add new defendants.

Once we have addressed these preliminary issues, we will outline the standard which will apply to the summary judgment motions. We will then consider each of the arguments raised by Defendant Lantz in her motion. Following our discussion of Defendant Lantz's motion, we will examine each of the potential grounds for summary judgment advanced by the Township Defendants. Finally, we will consider each of the issues raised by the Plaintiffs in their motion for summary judgment.

### A. Defendants' Motion to Strike

The Township Defendants filed their motion for summary judgment on May 8, 1998. The Plaintiffs filed their own motion for summary judgment on June 8, 1998. The Plaintiffs supplemented this motion with a brief opposing the Defendants' motions and supporting their own motion on or about June 11, 1998. The Defendants now seek to strike the Plaintiffs' motion and brief because they were not timely filed.

Local Rule of Civil Procedure 7.1 provides, in relevant part:

Every motion not certified as uncontested, or not governed by Local Civil Rule 26.1(g), shall be accompanied by a brief containing a concise statement of the legal contentions and authorities relied upon in support of the motion. Unless the parties

---

**3.** This strikes us as rather excessive.

have agreed upon a different schedule and such agreement is approved under Local Civil Rule 7.4 and is set forth in the motion, or unless the Court directs otherwise, any party opposing the motion shall serve a brief in opposition, together with such answer or other response which may be appropriate, within fourteen (14) days after service of the motion and supporting brief. . . .

Local R. Civ. P. 7.1(c). In accordance with this rule and Fed.R.Civ.P. 6(a) (3 day mailing rule), the Plaintiffs' response to the Township Defendants' motion was due no later than May 26, 1998.

By way of explanation, Plaintiffs' counsel writes:

Plaintiffs' Counsel's staff in computing the time in which to file a response to said motion, computed the time incorrectly and therefore, the deadline date was incorrectly entered on our calendar.

By the time this error was discovered, it was far too late to seek cooperation/an extension of time from defense counsel and, certainly, it was also too late to request an extension of time from the court, to extend the fourteen (14) day deadline.

In spite of what defense counsel contends, this technical error is excusable because it [sic] is not about winning at any cost, but it is about having justice done.

Plaintiffs' Motion to Strike Defendants' Joint Motion to Strike ("Plaintiffs' Motion to Strike") ¶¶ 4–6.

█ Even assuming that Plaintiffs' counsel somehow made an honest mistake in counting off 14 days, we are still at a loss to explain counsel's failure to request an extension from this court. Fed.R.Civ.P. 6(b)(2) provides that a court may "upon motion made after the expiration of the specified period permit the act to be done where the failure to act was a result of excusable neglect." Plaintiffs' counsel apparently understood this rule when he requested an extension of the discovery deadline from the court after discovery had ended. We are troubled by the fact that Plaintiffs' counsel's response to feeling that "certainly, it was also too late to request an extension of time from the court," was simply to file the motion, appar-

ently hoping that his tardiness would not be noted.

Furthermore, we fail to understand why Plaintiffs' counsel felt that "it was far too late to seek cooperation/an extension of time from defense counsel." Defendants' counsel readily agreed to an extension of time for the Plaintiffs to file a response to the Defendants' motion to dismiss, which was filed several months ago. And in any case, the belief that asking for a stipulation to extend a response deadline will fall on deaf ears is certainly no excuse for failing to seek such cooperation at all.

Plaintiffs' counsel's assertion that "this technical error is excusable because it is not about winning at any cost, but it is about having justice done," is also troubling for two reasons. First, Plaintiffs' counsel seems to suggest that the Defendants are somehow seeking to take advantage of the Plaintiffs and subvert justice. We point out that the problems raised by the Defendants' motion to strike are entirely the fault of Plaintiffs' counsel. Furthermore, we have seen no indication that the Defendants are out to "win at any cost." The conduct of Defendants' counsel has been reasonable and professional throughout this case, and the Plaintiffs' aspersions are unwarranted. Second, Plaintiffs' counsel's invocation of "having justice done" in an attempt to excuse his failure to comply with the procedural rules of this court is misplaced. We remind Plaintiffs' counsel that these rules are in place to serve the interests of justice, and that by complying with the rules, he will not prejudice his clients in any way.

We are troubled by the Plaintiffs' attempt to brush aside their repeated violations of the Local and Federal Rules of Civil Procedure and by counsel's failure to cite any relevant statutes or case law in support of their motion. The Plaintiffs' rhetoric seems to suggest that the Plaintiffs should be allowed to file whatever they want, whenever they want. Nevertheless, to prevent any appearance of injustice to the Plaintiffs, we will exercise our discretion to allow their submissions and dismiss the Defendants' motion to strike. We wish to warn Plaintiffs' counsel, however,

that we will allow no further attempts to flout the procedural rules of this court, and we advise counsel that a review of the Local Rules of Civil Procedure may be in order.

## B. Plaintiffs' Motion for Leave to Amend Complaint

The Plaintiffs have also filed a motion seeking leave to further amend the Complaint and join James Nolt and Ivan Miller as defendants. The Plaintiffs assert that only as of May 20, 1998, when Plaintiffs' counsel deposed members of the 1991 Board of Supervisors did the "rather extensive involvement" of these individuals become apparent. Motion for Leave to Amend Complaint to Join Additional Parties ("Motion to Amend") ¶ 1. The Plaintiffs allege that Mr. Nolt authorized and Mr. Miller supervised the 1991 seizure of property owned by the Plaintiffs.

The Defendants argue that the seizure took place pursuant to an order issued by the Court of Common Pleas, that the claims against these two would be barred by the statute of limitations, and that the Plaintiffs have known of the allegedly illegal conduct of Messrs. Nolt and Miller for many years.

The Plaintiffs respond that the statute of limitations argument should not bar their claims against these two individuals. The Plaintiffs base this argument on a continuing violation theory, notions of fairness and justice, the doctrine of equitable estoppel, and the doctrine of adverse domination. We will consider each of the Defendants arguments in turn, paying particular attention to the Plaintiffs' explanations for why the statute of limitations should not bar the claims.

### 1. Order of the Court of Common Pleas

█ On or about February 6, 1991, the Township filed a petition for contempt citation, alleging violations of court orders dated October 12, 1977, February 7, 1978, and October 1, 1979. On April 9, 1991, Senior Judge Wilson Bucher, Court of Common Pleas, found the Plaintiffs in contempt of court and ordered them to remove trash, debris, and unlicensed vehicles from their property. The Plaintiffs appealed Judge Bucher's order, and on August 7, 1992, the Commonwealth Court affirmed the order.

The Plaintiffs allege that after the April 19, 1991 order was issued, Mr. Nolt authorized and Mr. Miller supervised the seizure of property, including trailers, vehicles, and equipment owned by the Plaintiffs.

It is clear that the property seized in 1991 was taken pursuant to an order of the Court of Common Pleas. The order expressly provided,

> If respondents fail or refuse or neglect to comply with this Order then Township through its employees, agents or independent contractors is authorized to enter upon the subject property of Respondents after 72 hours notice of its intention to do so and remove and dispose of all offending trash, debris, and unlicensed vehicles.

Response of Township Defendants to Plaintiffs' Motion for Leave to Amend Complaint ("Response to Motion to Amend") Exhibit A, p. 3.

█ Given Mr. King's prior sworn testimony in state court, there can be no doubt that the vehicles which were seized were not licensed at the time, *id.* Exhibit B, p. 8 n. 3., and that the Plaintiffs received adequate notification of the seizure. *Id.* Exhibit C. Therefore, even accepting the Plaintiffs' allegations regarding the roles played by Nolt and Miller, it remains that these two individuals were merely carrying out a valid order issued by the Court of Common Pleas and upheld by the Commonwealth Court. Traditionally, public officials have enjoyed absolute immunity from civil damage claims in cases where they have carried out the facially valid orders of a court with proper jurisdiction. This immunity derives from the absolute immunity of judges. *See Mays v. Sudderth,* 97 F.3d 107, 110–112 (5th Cir.1996); *Mellott v. Heemer,* No. 1:cv–94–2071, 1997 WL 447844 (M.D.Pa. July 23, 1997). Such immunity certainly applies to the individuals the Plaintiffs seek to add as Defendants. Therefore, the Plaintiffs could not possibly assert a valid claim against Nolt or Miller, and the Plaintiffs' petition to add them as defendants in this case must be denied.

### 2. Plaintiffs' Prior Knowledge of Alleged Claims against Nolt and Miller

Even if Nolt and Miller were not entitled to immunity for their actions relating to the

1991 seizure, we would deny the Plaintiffs' Motion to Amend because the Plaintiffs knew of the allegedly culpable conduct of Nolt and Miller long before this case was instituted. We base this conclusion on several facts.

First, Nolt testified against the Plaintiffs at the April 8, 1991 hearing about Plaintiffs' property. The Plaintiffs were present for this testimony. Second, Nolt sent a letter, which he signed, to the Plaintiffs on June 3, 1991, advising them of the clean-up. *See* Plaintiffs' Exhibit I. Third, the Plaintiffs knew that Nolt was the Chairman of the Board of Supervisors, as evidenced by their 1995 Human Relations Complaint, where Nolt was named as a defendant. Fourth, the Plaintiffs knew to allege that Miller had searched their property at the time they filed their answers to the Defendants' interrogatories. *See* Plaintiffs' Answer to Defendants' Interrogatory No. 10. Fifth, the Plaintiffs were present during the 1991 clean-up, and therefore would have been able to see who was involved at that time.

We recognize that we have the power to allow the Plaintiffs to further amend the Complaint. However, we decline to exercise our discretion to do so at this point in the case.[4] The Federal Rules of Civil Procedure state:

> A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served. . . . Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given **when justice so requires.**

Fed.R.Civ.P. 15(a) (emphasis supplied).

We do not believe that justice requires us to grant the Plaintiffs' motion for leave to further amend the Complaint. The Plaintiffs have long known of most of the actions and background circumstances upon which they apparently wish to base their claims against Nolt and Miller. We find that the Plaintiffs clearly could have included claims against these two in the original Complaint or the Amended Complaint, and therefore, even if

we had not denied the Motion to Amend on immunity grounds, we would not allow these claims to be asserted under Fed.R.Civ.P. 15(a).

### 3. Statute of Limitations

■ Even if we had not elected to deny the Plaintiffs' Motion to Amend for the reasons given above, we would do so based upon the applicable statute of limitations. The Third Circuit has held that Pennsylvania's two year statute of limitations for personal injury claims is applicable to federal civil rights claims. *Bougher v. University of Pittsburgh,* 882 F.2d 74, 78 (3rd Cir.1989). The Plaintiffs suggest four reasons for finding that the statute of limitations should not operate as a bar in this case. We will discuss each of them.

#### a. Continuing Violation Theory

The Plaintiffs argue that the actions of Nolt and Miller amount to a continuing discriminatory policy, and that each application of that policy constitutes a discrete act of discrimination. The Plaintiffs believe that every day that a discriminatory practice continues is a fresh wrong for the purposes of the statute of limitations.

The Third Circuit has written that, "In most federal causes of action, when a defendant's conduct is part of a continuing practice, an action is timely so long as the last act evidencing the continuing practice falls within the limitations period." *Brenner v. Local 514, United Bhd. Of Carpenters and Joiners of Am.,* 927 F.2d 1283, 1295 (3rd Cir.1991). However, the Third Circuit has also cautioned that "a plaintiff may not rely on the continuing violation theory to advance claims about **isolated instances** of discrimination concluded in the past, even though the **effects** persist into the present." *E.E.O.C. v. Westinghouse Elec. Corp.,* 725 F.2d 211, 218 (3rd Cir.1983) (*citing Delaware State College v. Ricks,* 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980)), *cert. denied,* 469 U.S.

---

4. We note that discovery has long since ended, and that the parties have submitted multiple motions to this court, each based upon the assump-tion that the long list of Defendants included in the Amended Complaint was complete.

820, 105 S.Ct. 92, 83 L.Ed.2d 38 (1984) (emphasis in original).

■ In this case, the Plaintiffs have failed to identify any actions attributable to Nolt or Miller which fall within the relevant statute of limitations. The Plaintiffs base their continuing violation theory on zoning policies and a permanent injunction issued by the Court of Common pleas which are allegedly unconstitutional and discriminatory. However, the Plaintiffs have failed to present any evidence that Nolt or Miller have anything to do with these conditions. The only alleged wrongs attributed to Nolt and Miller have to do with the 1991 entry onto the Plaintiffs' property. The actions attributed to Nolt and Miller are not recurring and should have made the Plaintiffs aware of their duty to assert their rights back in 1991. *See Rush v. Scott Specialty Gases, Inc.*, 113 F.3d 476 (3rd Cir.1997). Therefore, we find that the Plaintiffs' claims against Nolt and Miller are barred by the applicable statute of limitations.

### b. Notions of Fairness and Justice

The Plaintiffs' next argument in favor of suspending the statute of limitations reads:

> Proper application of the statute of limitations in the case at bar requires the weighing of relative interests of the respective parties. By any conceivable standard of fairness and equity, the right of the Kings to assert their claims and vindicate their constitutional rights in a court of law should far outweigh any prohibition or constraints on the prosecution of stale claims.

Plaintiffs' Supplemental Brief in Opposition to Defendants' Response to Plaintiffs' Motion for Leave to Amend Complaint ("Reply to Defendants' Response to Motion to Amend") at 3.

The Plaintiffs cite *Colgan v. Fisher Scientific Co.*, 935 F.2d 1407 (3rd Cir.), *cert. denied*, 502 U.S. 941, 112 S.Ct. 379, 116 L.Ed.2d 330 (1991), in favor of this proposition. We are not sure why. In *Colgan* it was unclear when the alleged discriminatory treatment could have been perceived by the plaintiff. The court stated that "while with-

out a doubt it is desirable to have definitive limitation rules," it could not find that the statute of limitations began to run at the time an employee received a poor work evaluation, absent any actual negative employment action. *Id.* at 1420–1421. There is no such ambiguity in the case sub judice. The actions allegedly taken by Nolt and Miller in 1991 were clear to the Plaintiffs, and there is no reason to believe that the Plaintiffs could not have recognized the alleged import of these actions until now.

We remind the Plaintiffs that the aim of our system of jurisprudence is to ensure justice for all parties involved. One of the purposes of a statute of limitations is to protect potential defendants against the prosecution of stale claims. If we were to apply the standard urged by the Plaintiffs, we would vitiate the entire purpose of a statute of limitations. We are not inclined to do so.

### c. Doctrine of Equitable Estoppel

The Plaintiffs also argue that the doctrine of equitable estoppel may be used to overcome the Defendants' argument of untimeliness because the Plaintiffs,

> were misled into believing that the 1991 seizure operation was lawful and constitutional because it was executed by law enforcement and local officials, purportedly under the authority of a court order. Any reasonable person should also have delayed acting because of this situation, much less challenge official personnel who executed the operation and court the risk of being charged with the obstruction of justice, if not physically abused.

Reply to Defendants' Response to Motion to Amend at 4.

We are troubled by this argument for many reasons. First, Plaintiffs' counsel seems to be suggesting a propensity for physical abuse on the part of the Board of Supervisors or their agents. There is not even a hint of evidence on the record that this is true. Second, the Plaintiffs need not have delayed acting. The Plaintiffs knew of the clean-up operation months in advance, and received a letter reminding them of this a week before the entry onto the property. Third, the Plaintiffs did in fact challenge the

action before it took place. The Plaintiffs filed an appeal of the order authorizing the seizure with the Commonwealth Court. Fourth, and perhaps most troubling, Plaintiffs' counsel proceeds on the assumption that the order upon which Nolt and Miller were acting was unconstitutional. This order, issued by the Court of Common Pleas on April 9, 1991, has never been adjudicated unconstitutional. On the contrary, the Commonwealth Court expressly affirmed the order in an opinion filed August 7, 1992.

For each of the reasons expressed above, we believe that the Plaintiffs' equitable estoppel argument is seriously flawed, and does not merit further consideration.

#### d. Doctrine of Adverse Domination

The final reason suggested by the Plaintiffs for suspending the statute of limitations has to do with the doctrine of adverse domination.

It is relevant that the Defendants stood in a relative [sic] dominant position vis a vis the Plaintiffs. As the local Board of Supervisors and the zoning officer, they promulgated the policy, interpreted and enforced it, maintained the official records and controlled access to them. Because the named Defendants in this case also control the flow of official documents involving this proceeding, it is logical to think that they will not readily disclose or divulge incriminating information. The fact that the Defendants controlled access to relevant discovery materials and evidence is certainly germane in determining whether the Kings acted with sufficient diligence in prosecuting these alleged violations.

Reply to Defendants' Response to Motion to Amend at 5–6.

■ We are troubled by the frequency with which Plaintiffs' counsel resorts to unsupported aspersions about the Defendants rather than substantive legal arguments. The only case which Plaintiffs cite in favor of this position states, "This [doctrine] places a heavy burden of inquiry where it should be, on the party seeking to toll the statute of limitations." *Resolution Trust Corp. v. Farmer*, 865 F.Supp. 1143, 1158 (E.D.Pa.

1994). Moreover, in *Farmer*, the doctrine arises in the context of a derivative suit against a failed financial institution, and as such, is wholly inapplicable to the case at bar. Even if we were to apply the doctrine by analogy, the Plaintiffs would have to show that up until the time they filed their Motion to Amend, there was no informed, non-culpable person in a position to access the allegedly incriminating discovery documents to which Plaintiffs allude. The Plaintiffs have fallen far short of carrying this heavy burden.

We have considered the Plaintiffs' request to add Messrs. Nolt and Miller as defendants in this case. Even reading the motion and record in the light most favorable to the Plaintiffs, we find that this motion must be denied for several reasons. First, we have found that the actions upon which the Plaintiffs wish to base these claims would entitle Nolt and Miller to immunity, as they were enforcing a valid court order. Second, the Plaintiffs have not shown why these two individuals could not have been named as defendants long ago. Finally, the claims which the Plaintiffs apparently wish to assert against Nolt and Miller would be barred by the applicable statute of limitations.

### C. Summary Judgment Standard

The court shall render summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). An issue is "genuine" only if there is sufficient evidentiary basis on which a reasonable jury could find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A factual dispute is "material" only if it might affect the outcome of the suit under governing law. *Id.* at 248, 106 S.Ct. 2505. All inferences must be drawn and all doubts resolved in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *Gans v. Mundy*, 762 F.2d 338, 341 (3rd Cir.), *cert.*

*denied,* 474 U.S. 1010, 106 S.Ct. 537, 88 L.Ed.2d 467 (1985).

On motion for summary judgment, the moving party bears the initial burden of identifying those portions of the record which it believes demonstrate the absence of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). To defeat summary judgment, the non-moving party must respond with facts of record that contradict the facts identified by the movant and may not rest on mere denials. *Id.* at 321 n. 3, 106 S.Ct. 2548 (*quoting* Fed.R.Civ.P. 56(e)); *see also First Nat'l Bank of Pennsylvania v. Lincoln Nat'l Life Ins. Co.,* 824 F.2d 277, 282 (3rd Cir.1987). The non-moving party must demonstrate the existence of evidence that would support a jury finding in its favor. *See Anderson,* 477 U.S. at 248–49, 106 S.Ct. 2505.

■ Where, as here, cross-motions for summary judgment have been presented, we must consider each party's motion individually. Each side bears the burden of establishing a lack of genuine issues of material fact. The Third Circuit has written that:

> Cross-motions are no more than a claim by each side that it alone is entitled to summary judgment, and the making of such inherently contradictory claims does not constitute an agreement that if one is rejected the other is necessarily justified or that the losing party waives judicial consideration and determination whether genuine issues of material fact exist. If any such issue exists it must be disposed of by a plenary trial and not on summary judgment.

*Rains v. Cascade Industries, Inc.,* 402 F.2d 241, 245 (3rd Cir.1968). *See also Coolspring Stone Supply, Inc. v. American States Life Ins. Co.,* 10 F.3d 144, 150 (3rd Cir.1993); *Bencivenga v. Western Pennsylvania Teamsters and Employers Pension Fund,* 763 F.2d 574, 576 (3rd Cir.1985).

The Plaintiffs' motion applies to the same nucleus of facts raised in the Defendants' motion. In addition, the Plaintiffs' motion challenges the constitutionality of a decree issued by the Court of Common Pleas and of various Township regulations. We will first consider the motion of Defendant Lantz, and the Plaintiffs' arguments in response thereto. We will then consider the motion of the Township Defendants in conjunction with corresponding arguments in the Plaintiffs' motion and response. Finally, we will consider any elements of the Plaintiffs' motion which have not been addressed in our discussion of the Township Defendants' motion, making additional findings as needed.

### D. Defendant Lantz's Summary Judgment Motion

Although it is not completely clear from the face of the Complaint itself, it seems that the Plaintiffs are asserting only the conspiracy and punitive damages claims against Defendant Lantz. Defendant Lantz now moves for summary judgment in her favor, arguing that she is protected by the Noerr–Pennington doctrine and that her actions do not merit punitive damages.

#### 1. Noerr–Pennington Doctrine

■ The Noerr–Pennington doctrine protects the right of citizens to petition their government. The Third Circuit Court of Appeals has expressly applied this doctrine to protect citizens from liability for exercising their rights to petition state and local governmental bodies. *See e.g., Brownsville Golden Age Nursing Home, Inc. v. Wells,* 839 F.2d 155, 160 (3rd Cir.1988).

■ The crux of the conspiracy complaint against Defendant Lantz hinges upon her testimony against the Plaintiffs in a state court proceeding. The Plaintiffs also complain about photographs that Defendant Lantz took of the Plaintiffs' property, many of which were admitted into evidence during her testimony in state court.

■ The Plaintiffs allege that Defendant Lantz's conduct was the product of several malevolent motives. *See e.g.,* King Dep. at 176. However, there is no evidence of this in the record. Furthermore, we note that a defendant's motive is irrelevant under the Noerr–Pennington doctrine: "As long as there is petitioning activity, the motivation behind the activity is unimportant." *Barnes Foundation v. Township of Lower Merion,*

927 F.Supp. 874, 877 (E.D.Pa.1996); *see also Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 139, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961) ("The right of the people to inform their representatives in government of their desires with respect to the passage or enforcement of laws cannot properly be made to depend upon their intent in doing so").

 The only restriction placed upon the Noerr–Pennington doctrine is the so-called "sham exception." Under this exception, a defendant is not protected if he or she is simply using the petition process as a means of harassment. We have carefully reviewed the record in this case, and we conclude that the sham exception does not apply here. Defendant Lantz's testimony in state court easily satisfies the requirements of the Noerr–Pennington doctrine, in that the obvious aim of her testimony was to ensure the Plaintiffs compliance with local zoning regulations.

The Plaintiffs have introduced no evidence that Defendant Lantz was engaged in a campaign of harassment against them. The Plaintiffs have merely accused her of conspiring with local officials to harass the Plaintiffs. Reviewing the record carefully and in the light most favorable to the Plaintiffs, we find no evidence that Defendant Lantz was acting under the direction of the Township at any time. Even if this were not the case, the Supreme Court has expressly stated that there is no conspiracy exception to the Noerr–Pennington doctrine. *City of Columbia v. Omni Outdoor Advertising, Inc.*, 499 U.S. 365, 383, 111 S.Ct. 1344, 113 L.Ed.2d 382 (1991). The Plaintiffs cannot circumvent the formidable barrier to prosecution imposed by the Noerr–Pennington doctrine by trying to implicate Defendant Lantz in a conspiracy with the Township Defendants.

The fact that Defendant Lantz took pictures of the Plaintiffs' property is irrelevant. We note that all such pictures depict scenes and conditions which were plainly visible from public roads. All photographs show only the exterior of the property, and no people are depicted in any of the pictures. Under these circumstances, there can be no claim of intrusion into privacy, and indeed, the Plaintiffs do not advance such a claim.

Furthermore, it is clear that the pictures were taken in contemplation of Defendant Lantz's testimony in state court, *see* Lantz Dep. at 15–17, 45, and are thus subject to the protection of the Noerr–Pennington doctrine. As we have already stated, the evidence clearly establishes that Defendant Lantz was not acting under the direction of the Township when she took the pictures. *See* Lantz Dep. at 17.

The Plaintiffs suggest that Ms. Lantz "may be liable for violations of section 1985(3) if it is shown that she collaborated with other private citizens or neighbors in committing acts in furtherance of the conspiracy to destroy the Kings' business and livelihood and violated their constitutional right of privacy." Plaintiffs' Brief in Opposition to Defendants' Motion for Summary Judgment and in Support of their Motion for Summary Judgment ("Plaintiffs' Brief in Opposition") at 22. Perhaps, but the Plaintiffs have provided not a scintilla of evidence that any such conspiracy existed between Ms. Lantz and any other "private citizens or neighbors." The Plaintiffs bear the burden of showing that there is a sufficient evidentiary basis on which a reasonable jury could find for them (the non-moving party). *See Anderson*, 477 U.S. at 249, 106 S.Ct. 2505. Because they have not met this burden, we will grant Defendant Lantz's motion for summary judgment, and dismiss the conspiracy claim which has been brought against her.

### 2. Punitive Damages

We have found that Defendant Lantz is entitled to summary judgment on the conspiracy claim which the Plaintiffs have asserted against her. Therefore, the Plaintiffs' punitive damage claim becomes moot, as there is no culpable conduct upon which it can be premised. Nevertheless, even if we had not granted summary judgment on the conspiracy claim against Defendant Lantz, we would dismiss the punitive damages claim against her.

 The legal standard for punitive damage claims is a matter of state law. *See Griffiths v. CIGNA Corp.*, 857 F.Supp. 399, 409–410 (E.D.Pa.1994), *aff'd*, 60 F.3d 814 (3rd

Cir.1995). The Supreme Court of Pennsylvania has adopted the Restatement (Second) of Torts, § 908, which states:

> [A] court may award punitive damages only if the conduct was malicious, wanton, reckless, willful, or oppressive. The proper focus is on "the act itself together with all the circumstances including motive of the wrongdoer and the relations between the parties. . . ." In addition, the actor's state of mind is relevant. The act or omission must be intentional, reckless, or malicious.

*See Griffiths,* 857 F.Supp. at 410 (internal citation removed).

 We have already found that testifying in state court proceedings is an act which is protected by the Noerr–Pennington doctrine. To allow punitive damages for such conduct would fly in the face of reason. In addition, the taking of photographs of the type and under the circumstances described above falls woefully short of the extreme behavior required to merit punitive damages under Pennsylvania law.

We find that Defendant Lantz is entitled to summary judgment on the conspiracy claim which has been asserted against her by the Plaintiffs. Defendant Lantz's testimony in state court is protected by the Noerr–Pennington doctrine. In addition, we find that no reasonable jury could infer the existence of a conspiracy on the basis of the evidence which has been presented. We also find that Defendant Lantz is entitled to summary judgment on the Plaintiffs' punitive damages claim. We base our decision on the fact that the Plaintiffs have provided no evidence of unlawful conduct on Ms. Lantz's part, and because no reasonable jury could characterize her conduct as reckless or malicious.

### E. The Remaining Defendants' Summary Judgment Motion

The Complaint filed by the Plaintiffs contains three specific counts: "Count I—42 U.S.C. Section 1981," "Count II—42 U.S.C. Section 1983 Equal Protection," and "Count III—42 U.S.C. Section 1985(3)." We have read the Complaint closely several times and can only conclude that the way in which the

Plaintiffs' claims are grouped under these three headings is utterly random. The first two Counts contain a hodgepodge of state and federal law claims based upon alleged interference with: the right to contract, substantive due process (citing both protected liberty and property interests), and equal protection of the laws. These Counts also contain claims alleging an unfair retroactive application of zoning regulations, improper taking of tangible and intangible property, and a violation of the Pennsylvania doctrine of natural expansion of a nonconforming use. Count III merely realleges the improper taking, equal protection and due process claims in the context of a conspiracy. The Plaintiffs seek compensatory damages, punitive damages, and injunctive relief.

We have parsed these three Counts as carefully as possible and have attempted to align them with the Township Defendants' Motion. Accordingly, our analysis will consider the issues as follows: (1) the Defendants' statute of limitations argument, (2) the Plaintiffs' § 1981 claim concerning the right to contract, (3) the Plaintiffs' § 1983 claims involving substantive due process, equal protection, and the improper taking of tangible and intangible property, (4) the Plaintiffs' § 1985 conspiracy claim, (5) the Plaintiffs' state law claim based upon the Pennsylvania doctrine of natural expansion of non-conforming uses, (6) the Plaintiffs' request for injunctive relief, (7) the Plaintiffs' request for punitive damages, (8) the affirmative defenses advanced by the individual Township Defendants, and (9) the affirmative defenses asserted by the Defendant Township.

### 1. Statute of Limitations

 When Congress enacted 42 U.S.C. § 1983, it did not establish a statute of limitations for civil rights actions. In light of this, the Supreme Court has held that in federal civil rights actions, federal courts should apply the state law of limitations governing analogous causes of action. *Board of Regents of the Univ. of the State of New York v. Tomanio,* 446 U.S. 478, 483–84, 100 S.Ct. 1790, 64 L.Ed.2d 440 (1980). The Third Circuit has held that Pennsylvania's two year statute of limitations for personal injury

claims is applicable to federal civil rights claims. *See Bougher*, 882 F.2d at 78. The time at which the two year limitation begins to accrue is the point at which a plaintiff knows or should know of the injury which is the basis of the action. *Mitchell v. Hendricks*, 431 F.Supp. 1295 (E.D.Pa.1977). Typically, the issue of when a claim began to accrue is a question of law, to be resolved by a judge. *See e.g., Burke v. Gateway Clipper, Inc.*, 441 F.2d 946 (3rd Cir.1971).

The Plaintiffs argue that none of the causes of action contained in the Complaint began to accrue until the time of the first hearing before Judge Stengel, September 26, 1996. The Plaintiffs also claim that the taking cause of action did not begin to accrue until Judge Stengel issued his Final Decree and Injunction on October 24, 1997. Another argument advanced by the Plaintiffs is that the alleged unlawful acts upon which the suit is based are continuing in nature. Finally, the Plaintiffs claim that the statute of limitations does not apply to their request for injunctive relief. We will consider each of these arguments.

### a. Accrual Before 1996 Hearing

■ The Plaintiffs argue that the proceedings in the 1970s, 1980s, and early 1990s involved zoning issues exclusively. They argue that the constitutional issues only arose at the conclusion of the hearing on September 20, 1996. However, the Plaintiffs do not specify why this is so. Their argument on this point consists of repeated assertions that they did not, should not, and could not have known of any constitutional violations before 1996. *See* Plaintiffs' Brief in Opposition at 19–20. Exactly why this is so is never explained in any specific detail.

The Plaintiffs' complaint was not filed until August 8, 1997, more than two years after the June 6, 1995 enforcement notice was issued. In addition, we find that the Plaintiffs knew of all of the alleged constitutional violations, with the exception of Judge Stengel's order, by June of 1995. In September of 1995, the Plaintiffs filed a complaint with the Pennsylvania Human Rights Commission. This complaint cited the June 1995 suit filed by the Township against the Plaintiffs, allegedly motivated by the Plaintiffs' reli-

gious affiliation. The complaint also included references to activity that had taken place as long ago as the 1970s. On the basis of the record submitted by the parties, we find that the Plaintiffs knew of the alleged civil rights violations by June of 1995, and likely much earlier. In addition, we note that the Zoning Hearing Board last took any action against the Plaintiffs in approximately 1976, making the claims against the Board and its members even more stale.

■ The only Defendants who were also listed as defendants in the Human Rights Commission complaint were Defendant Latschar and the Township. The fact that these two were listed in the Human Rights Commission complaint tolled the statute of limitations against them and makes the instant Complaint timely with respect to these two Defendants. Defense counsel acknowledges this fact. Accordingly, we find that the Plaintiffs' claims against the remaining Township Defendants are barred by the applicable statute of limitations.

### b. Accrual of Taking Claim

■ The Plaintiffs argue that their taking claim did not arise until Judge Stengel issued his order on October 24, 1997. To the extent that the Plaintiffs base their taking claim upon any other action, we find that the statute of limitations has run. The Plaintiffs have known of any possible violation relating to the 1991 seizure of property since that time. A letter was sent by Defendant Latschar prior to the seizure, and the Plaintiffs were present to observe the clean-up operation as well. There is no reason to believe that they would only have begun to suspect that something was amiss after the 1996 hearing. The same holds true to the other types of enforcement action instituted by the Township and ordered by the state courts. Therefore, the Plaintiffs taking claim is barred by the statute of limitations, with the exception of that portion of the claim related to the order issued by Judge Stengel.

### c. Continuing Violation Theory

The Plaintiffs next argue that even if the statute of limitations were to bar some or all

of their claims, this bar should be suspended because the alleged constitutional violations have been continuing. The Defendants respond that the large gaps in time between the relevant conduct—which, for the most part, took place in the 1970s, 1991, and 1995—show that the alleged misconduct cannot be construed as representing a continuing pattern.

 To establish that a continuing violation theory should apply to their case, the Plaintiffs must show (1) that at least one act occurred within the statutory period, and (2) that prior conduct was not isolated or sporadic, but was part of a continuing, ongoing pattern. *See West v. Philadelphia Elec. Co.*, 45 F.3d 744, 754–755 (3rd Cir.1995). However, if the prior events should have alerted a reasonable person to act at that time, the continuing violation theory will not overcome the relevant statute of limitations. *See Hicks v. Big Brothers/Big Sisters of America*, 944 F.Supp. 405, 408 (E.D.Pa.1996).

 We find that the Plaintiffs' continuing violations argument must fail. The conduct upon which the Plaintiffs' claims are based includes several specific enforcement actions. But there is where the similarity ends. The Plaintiffs have failed to provide any evidence that the Township's attempts to enforce its zoning regulations against the Plaintiffs were part of some continuing pattern of harassment or discrimination. The Plaintiffs' attempt to characterize the orders issued by three state court judges as additional elements of such a calculated and malicious pattern of conduct borders on the absurd. There is absolutely no evidence supporting this malediction of the local judiciary. Furthermore, even if we were to find that such a pattern did exist, we would also find that a reasonable person would have recognized such conduct and would have acted at that time, in which case the continuing violation theory would not overcome the relevant statute of limitations. *See Hicks, supra.*

### d. Request for Injunctive Relief

 There is, of course, no statute of limitations specifically applicable to requests for injunctive relief. In this case, the Plaintiffs are requesting injunctive relief with an order issued by Judge Stengel, issued on June 27, 1997, which is still in effect today. Under the circumstances, we would not hold that the Plaintiffs' request for injunctive relief was untimely. However, for reasons which will be explained in this Opinion, we find that there has been no actionable wrongful conduct on the part of the Township Defendants, and that Judge Stengel's order is not constitutionally suspect. *See* discussion *infra* Part III.E.6. Therefore, the Defendants' argument that the request should be barred because of the statute of limitations becomes moot, as we will decline to grant the request on its merits.

### e. Summary of Statute of Limitations Arguments

We have found that the statute of limitations bars the Plaintiffs' civil rights claims against all of the Township Defendants, with the exception of Defendant Latschar and the Township itself. We have also dismissed the Plaintiffs' taking claim, except as it relates to the order issued by Judge Stengel. We reject the Plaintiffs' attempt to overcome the statute of limitations by characterizing the alleged wrongful conduct as a continuing violation. Finally, we find that although there is no statute of limitations bar to the Plaintiffs' request for injunctive relief, this request must be dismissed because it has no merit. *See* discussion *infra*, Part III.E.6.

### 2. Plaintiffs' § 1981 Claim

Section 1981 of Title 42 states,

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981(a).

The Plaintiffs argue that the Township Defendants have interfered with their ability

to conduct business. The Plaintiffs also allege that the injunctions and court orders which have been entered against them effectively interfere with their ability to establish future business relationships. We find that the Plaintiffs' § 1981 claim must fail for three reasons: (1) assuming that the Plaintiffs are members of a religious minority, such classes are not subject to protection under § 1981; (2) the Plaintiffs have failed to show that they are members of a racial or ethnic minority, which would merit § 1981 protection; and (3) the Plaintiffs have not shown that the Township Defendants unlawfully hindered the Plaintiffs' ability to make or enforce contracts.

### a. Religious Discrimination

■ Section 1981, most recently amended in 1991, is designed to prohibit racial discrimination in the rental or sale of realty or personal property. It accomplishes this by prohibiting racial discrimination in the making and enforcing of private and public contracts. *See Runyon v. McCrary*, 427 U.S. 160, 96 S.Ct. 2586, 49 L.Ed.2d 415 (1976). The scope of § 1981 is not so broad as to include disparity in treatment on the basis of religion, sex, or national origin. *Vuksta v. Bethlehem Steel Corp.*, 540 F.Supp. 1276, 1281 (E.D.Pa.1982), *aff'd* 707 F.2d 1405, *cert. denied*, 464 U.S. 835, 104 S.Ct. 121, 78 L.Ed.2d 119 (1983). The Plaintiffs acknowledge that § 1981 does not apply to religious discrimination claims. Plaintiffs' Brief in Opposition at 26.

■ It is incontrovertible that the Amish are widely considered to be a religious group bound together by a faith in certain religious tenets. Indeed, the Amish faith is one of the oldest religions in America, and has a long and deeply respected history—as a religion.

There is some disagreement about whether or not the Plaintiffs are members of the Amish church. The Defendants have introduced evidence which suggests that the Plaintiffs have been excluded from their congregation since the 1960s. Mr. King has testified that he and his wife became excluded in the mid–1980s, but that they both still consider themselves to be Amish. We need not resolve this issue at this point because the Plaintiffs' religious status is irrelevant

with respect to their § 1981 claim. The Plaintiffs' assertion that "applicable case law is sufficiently broad and flexible to encompass the Plaintiffs as members of a protected class for the purpose of [§ 1981]," Plaintiffs' Brief in Opposition at 28, is legally untenable. Section 1981 simply does not protect against religious discrimination.

### b. Ethnic Status Discrimination

■ Notwithstanding the limited scope of § 1981, the Plaintiffs argue that they should be protected under § 1981 because they are members of "the Amish ethnic culture." Plaintiffs pin their hopes of inclusion within § 1981 on a single case from the Southern District of New York, which found that Orthodox Jews were protected under §§ 1981 and 1982, as these sections were "intended to protect from discrimination identifiable classes of persons who are subjected to intentional discrimination solely because of their ancestry or ethnic characteristics." *LeBlanc–Sternberg v. Fletcher*, 781 F.Supp. 261, 267 (S.D.N.Y.1991) (internal citation omitted).

The Supreme Court has held that Jews are a distinct race for civil rights purposes. *Shaare Tefila Congregation v. Cobb*, 481 U.S. 615, 618, 107 S.Ct. 2019, 95 L.Ed.2d 594 (1987). And at least one federal court has applied this distinction in the context of § 1981. *See Singer v. Denver Sch. Dist. No. 1*, 959 F.Supp. 1325, 1331 (D.Colo.1997). However, we have been unable to locate any cases in which the Amish have been found to be a distinctly identifiable ethnic or racial group. The emergence of an independent, separate ethnic identity out of such a distinct religious group may well be possible. Nevertheless, Plaintiffs have presented no evidence which would support such a finding, and we are not prepared to hold in this case that a distinctly Amish ethnic group can be identified apart from the Amish religious identity. While there is a large population of "non-practicing" Jews in America, there is no proof of a similar population of "non-practicing" Amish. Therefore, in this case, we believe that the Amish are most accurately described as a religious group, rather than a

distinct racial or ethnic minority, and as such, do not fall within the scope of § 1981.

### c. Culpable Conduct under § 1981

■ Even if we were to consider the merits of the Plaintiffs' § 1981 claim, we would grant the Township Defendants' summary judgment motion in this respect because no reasonable jury could find for the Plaintiffs on this claim. The Plaintiffs have failed to identify any specific conduct on the part of the Township Defendants which could be interpreted as interfering with the Plaintiffs' right to make contracts.

The Plaintiffs fail to allege, with any specificity, what particular conduct forms the basis of their § 1981 claim. The only actions which may be interpreted as presenting such interference would be the petitions for contempt filed by the Township, the orders issued by the Court of Common Pleas on June 21, 1976, October 12, 1977, January 3, 1978, February 6, 1978, October 1, 1979, April 9, 1991, and October 23, 1997, the enforcement notice filed by the Township and subsequent entry onto the Plaintiffs' property, or the denial of a variance request filed by the Plaintiffs in the 1970s. We cannot discern any way in which these events would give rise to a valid cause of action under § 1981. Nevertheless, we will attempt to deal with each possible argument which may conceivably be advanced by the Plaintiffs in this regard—a task made more burdensome by the Plaintiffs' failure to explain their own cause of action in meaningful detail.

The Plaintiffs may believe that the enforcement activity of June 9, 1991 constitutes a violation of § 1981. The Plaintiffs state that their complaint about the June 9, 1991 search hinges not upon an allegation that the participants exceeded the scope of the order, but that the search took place in violation of the Fourth Amendment, which prohibits unreasonable searches and seizures. Plaintiffs' Brief in Opposition at 17. We note that the entry onto the Plaintiffs' property and seizure of certain items were performed in accordance with a legitimate court order, and therefore, all of those involved are entitled to immunity. *See* discussion *supra* Part III. B.1.

■ The Plaintiffs have hinted that the state court judges acted improperly when they issued the orders referred to above. We remind the Plaintiffs that judges are absolutely immune from civil liability based upon their judicial conduct. *See Bradley v. Fisher*, 80 U.S. 335, 347, 13 Wall. 335, 20 L.Ed. 646 (1871) ("For it is a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself. Liability to answer to every one who might feel himself aggrieved by the action of the judge, would be inconsistent with the possession of this freedom, and would destroy that independence without which no judiciary can be either respectable or useful").

The Plaintiffs may also wish to contest the validity of any or all of these court orders, without bringing any claims against the judges who issued them. In this case, the proper method for challenging the orders would have been to file an appeal in state court. On two occasions the Plaintiffs did just this, and in both cases the decision of the lower court was upheld. Given the timing of the orders, most of these claims would be stale, if indeed the Plaintiffs are seeking to challenge them in federal court. In addition, we believe that suit in this court would likely be procedurally barred. As the Third Circuit explained in *FOCUS v. Allegheny County Court of Common Pleas*, 75 F.3d 834 (3rd Cir.1996):

> The *Rooker–Feldman* doctrine provides that federal district courts lack subject matter jurisdiction to review final adjudications of a state's highest court or to evaluate constitutional claims that are inextricably intertwined with the state court's decision in a judicial proceeding. We have interpreted the doctrine to encompass final decisions of lower state courts.... *Rooker–Feldman* applies only when in order to grant the federal plaintiff the relief sought, the federal court must determine that the state court judgment was erroneously entered or must take ac-

tion that would render that judgment ineffectual.

*Id.* at 840 (internal citations omitted).[5]

The Plaintiffs may have meant to base their § 1981 claim upon two failed petitions to the Zoning Hearing Board. In 1976, the Plaintiff was denied a special exception regarding an addition to the mill building. On June 21, 1976, Judge Mueller affirmed the Zoning Hearing Board's decision. The Plaintiffs' subsequent appeal was dismissed by the Commonwealth Court due to the failure of the Plaintiffs' attorney to file the necessary briefs. In the Fall of 1995, the Plaintiffs filed a Request for a Special Exception to a zoning ordinance. A hearing on the matter was scheduled for November 9, 1995, and although the Plaintiffs did not attend the meeting, their attorney appeared and requested a postponement. The request was granted, but neither the Plaintiffs nor their attorney showed up for the rescheduled hearing, and the plaintiffs took no additional steps to pursue the special exception. The two adverse zoning decisions noted above are the only two such incidents referred to in the record. In the first, the state appellate court affirmed the Zoning Hearing Board's decision. In the second, the Plaintiffs themselves let the matter lapse. We can see no way in which such conduct could give rise to a valid claim under § 1981.

Finally, the Plaintiffs may believe that the Township Defendants violated § 1981 by petitioning for any of the orders referred to above. We have carefully reviewed the evidence in the record relating to these orders. We have also looked for evidence which would indicate any anti-Amish bias on the part of the individual Township Defendants against the Plaintiffs. Having done so, we find that no reasonable jury could conclude that the Township Defendants' decision to petition local courts was motivated by any anti-Amish bias against the Plaintiffs. There is simply no hint in the record that any of the Defendants harbored any such bias.

The Plaintiffs could not prevail on their § 1981 claim against the Township Defendants under any imaginable theory. Furthermore, we have found that the Plaintiffs do not belong to any class which is protected by § 1981. Therefore, we will grant the Township Defendants' motion to dismiss this claim.

### 3. Plaintiffs' § 1983 Claims

The Plaintiffs' Complaint and Brief in Opposition contain various claims asserted under 42 U.S.C. § 1983. Section 1983 states, in relevant part,

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

Among the causes of action brought by the Plaintiffs which may be considered § 1983 claims are the following: (1) interference with the Plaintiffs' rights to substantive due process (in the form of interference with the right to specific private employment, *see* Complaint ¶ 60, and the right to pursue a profession free from unreasonable governmental interference, *see* Complaint ¶¶ 41, 43, 60); (2) interference with the Plaintiffs' rights to equal protection of the laws (specifically, discouraging development of Amish-controlled enterprises, *see* Complaint ¶ 50(c)); and (3) unlawful taking of the Plaintiffs' property (stemming from the June 1991 seizure, *see* Complaint ¶ 44, the way in which the Plaintiffs have been prevented from using their property to conduct various business enterprises, *see* Complaint ¶¶ 44, 53, 59, and retroactive application of zoning regulations, *see* Complaint ¶ 52).

---

**5.** Even if the Rooker–Feldman doctrine did not apply, on the evidence before us, we would find the court orders, and in particular Judge Stengel's order, fully valid. *See* discussion *infra*, Part III.E.3.c ("Unlawful Taking Claim"). Nevertheless, in the interest of comity, we will not interrupt the appellate process in the state court system at this time.

### a. Substantive Due Process Claims

The Plaintiffs complain that the Township Defendants have violated their rights to substantive due process by interfering with both a protected property and a protected liberty interest. These two types of due process claims involve different legal standards, and therefore merit separate consideration.

#### i. Property Interest

The Plaintiffs allege that the Defendants interfered with their right to specific private employment. *See* Complaint ¶ 60. The Defendants respond that any interference with the Plaintiffs' business was not only constitutional, but required by local zoning laws.

■■ "There can be no question that zoning ordinances are valid and constitutional." *Whitpain Township v. Bodine,* 372 Pa. 509, 94 A.2d 737, 739 (Pa.1953); *Village of Euclid, Ohio v. Ambler Realty Co.,* 272 U.S. 365, 395, 47 S.Ct. 114, 71 L.Ed. 303 (1926)("[B]efore the ordinance can be declared unconstitutional, [it must be shown] that such provisions are clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare"). In order to establish a violation of their substantive due process rights, the Plaintiffs must demonstrate that they have been wrongfully deprived of a protected property interest. *Taylor Investment Ltd. v. Upper Darby Township,* 983 F.2d 1285, 1292 (3rd Cir.), *cert. denied,* 510 U.S. 914, 114 S.Ct. 304, 126 L.Ed.2d 252 (1993).

■■ Local ordinances regulating land development and use are reasonable attempts under the police power to safeguard the health, safety and general welfare of the general public, and are constitutionally sound. *Township of Hampden, Cumberland County v. Tenny,* 32 Pa.Cmwlth. 301, 379 A.2d 635, 638 (Pa.Cmwlth.1977). In addition, the state courts have consistently upheld the efforts of the Township to enforce zoning regulations with regard to the Plaintiffs. Indeed, it seems that most of the enforcement action complained of was brought upon by the Plaintiffs' own failure to comply with applicable zoning regulations and valid court orders. Therefore, we find that there has been no wrongful deprivation with regard to this claim.

■■ Contrary to the Plaintiffs' apparent belief, there is no general constitutional right to engage in any sort of business one desires upon one's own property. Accordingly, there is no reason to believe that the Plaintiffs were deprived of a protected property right. Accordingly, we find that the Defendants are entitled to summary judgment on the property right branch of the Plaintiffs' § 1983 due process claim.

#### ii. Liberty Interest

■■ The Plaintiffs' liberty interest due process claim alleges that they were deprived of the right to pursue their chosen profession free from unreasonable governmental interference. Complaint ¶¶ 41, 43, 60. This contention is apparently rooted in the state court's imposition of an allegedly unlawful injunction and alleged denial of a full and fair hearing. Complaint ¶ 51. The Plaintiffs are in the wrong forum to appeal such a decision. This appeal has properly been taken to the Commonwealth Court, where it is currently pending. Under the Rooker–Feldman doctrine, it would be inappropriate for us to assume jurisdiction in this case. The Rooker–Feldman doctrine applies equally to state court judgments which are interlocutory. *Port Auth. Police Benev. Ass'n v. Port Auth.,* 973 F.2d 169, 178 (3rd Cir.1992). However, even if we were to assume jurisdiction over this claim, we can find no constitutional infirmity in the state court's order. *See* discussion *infra,* Part III.E.3.c. Therefore, even if we were to consider this claim on its merits, we would be inclined toward dismissal.

### b. Equal Protection Claim

The Plaintiffs assert an equal protection claim, arguing that the Township Defendants' actions will discourage the development of Amish-controlled enterprises in the Township. Complaint ¶ 50(c). In the equal protection section of the Plaintiffs' Brief in Opposition, they neglect to argue that they have been discriminated against as members of a protected class. *See* Plaintiffs' Brief in

Opposition at 31–32. Nevertheless, we will proceed as if they had raised this argument.

■ If the Plaintiffs could show that the Township's zoning regulations or enforcement of such regulations against the Plaintiffs were motivated by the Plaintiffs' religious affiliation, or that the Township's regulations or actions distinguished between Amish and non-Amish citizens, the Township's regulations and actions would be reviewed under a strict scrutiny standard. *See Tolchin v. Supreme Court of the State of New Jersey*, 111 F.3d 1099, 1113–1114 (3rd Cir.), *cert. denied,* —— U.S. ——, 118 S.Ct. 435, 139 L.Ed.2d 334 (1997). However, the Plaintiffs have failed to make any showing that the Township's actions were motivated by religious animus against the Plaintiffs in particular or that the Township had a policy of treating Amish citizens in any distinctive manner. In fact, the Plaintiffs have failed to show that the Township Defendants were even conscious of the Plaintiffs' professed religious affiliation at the time that any of the complained of actions occurred.

■ Because the Plaintiffs have failed to show that a protected class analysis should apply to their equal protection claim, we will apply a rational basis test to the claim. *Id.* Under this standard, we conclude that the Plaintiffs' equal protection claim must fail. The Township's actions in relation to the June 1991 clean-up were taken in accordance with a valid court order. The Township's institution of legal proceedings against the Plaintiffs on multiple occasions were nothing more than attempts to enforce zoning regulations to which all residents, including the Plaintiffs, are subject. The taking of pictures by individual Township Defendants took place in the course of such enforcement, and did not intrude upon the Plaintiffs' privacy. Under these circumstances, we find that the Township's actions toward the Plaintiffs were, at all times, rationally related to a legitimate government purpose. Accordingly, the Township Defendants' motion for summary judgment will be granted with respect to the Plaintiffs' equal protection claim.

### c. Unlawful Taking Claim

The Plaintiffs allege that the manner in which zoning regulations have been applied to them, as well as the recent permanent injunction issued by Judge Stengel, have effected a taking of the Plaintiffs' property without just compensation, in violation of the Fifth and Fourteenth Amendments. Complaint ¶¶ 53–59. The Township Defendants respond that the Plaintiffs have failed to establish a viable taking claim under the relevant legal standards. We concur with the Township Defendants and will grant their motion for summary judgment on the Plaintiffs' taking claim.

As a preliminary matter, we believe that any attack upon this court decree is barred by the Rooker–Feldman doctrine, as discussed earlier in this opinion. Even if not so barred, the facts do not support an unlawful taking claim. We note that Mr. King testified in his deposition that he retired at the end of 1996. King Dep. at 8–9. In addition, the Plaintiffs have failed to present evidence of any specific damages they have suffered.[6] These facts make the Plaintiffs' taking claim moot, since Mr. King has admitted that he is no longer in the business of making or selling furniture, and because there is simply no evidence from which a jury could infer that the Plaintiffs suffered economic harm at the hands of the Township Defendants. However, even absent these circumstances, we would still rule in the Township Defendants' favor on the taking claim because the Plaintiffs cannot establish such a cause of action.

The Plaintiffs acknowledge that the Township Defendants are entitled to regulate property use with the goal of protecting the health, welfare, and safety of the community. The Plaintiffs' argument is that the Township Defendants have overreached their authority

---

**6.** The Plaintiffs continued assertion that "Plaintiffs will be prepared to establish damages, upon proving liability on the part of the named Defendants," Plaintiffs' Supplemental Brief in Opposition to Defendants' Motion for Summary Judgment ("Plaintiffs' Supplemental Brief in Opposition") at 8, is irrelevant since this case has not been bifurcated for separate trials on liability and damages. Furthermore, we note that actual damage is an element of liability for several of the Plaintiffs' claims.

by making it commercially impossible for the Plaintiffs to engage in their chosen profession. The Plaintiffs then argue, "[W]e do not think it is proper or correct to read [cited case law], as the Defendants contend, that the Kings be deprived of *all* economically viable use of their property in order for there to be a 'taking'. A showing of the deprivation of the economic viable use is sufficient." Plaintiffs' Brief in Opposition at 38. We are not sure what this means or what distinction the Plaintiffs are attempting to draw. We will assume, based upon the context of the quoted passage, that the Plaintiffs wish us to apply a more lenient standard, under which they must demonstrate that they have been deprived of most of the economically viable use of the land, rather than all such use. We decline to do so.

■ In the context of zoning and land use cases, the Supreme Court has held that municipal action can be considered a taking only if those actions deprive an owner of all economically viable uses of their property. *Schad v. Borough of Mt. Ephraim*, 452 U.S. 61, 68, 101 S.Ct. 2176, 68 L.Ed.2d 671 (1981). Neither the deprivation of the most beneficial use of the land, nor a severe decrease in the value of the property will give rise to an action for unlawful taking. *United States v. Central Eureka Mining Co.*, 357 U.S. 155, 168, 78 S.Ct. 1097, 2 L.Ed.2d 1228 (1958). The Third Circuit has held that, in order to state a viable taking claim, a plaintiff must demonstrate the diminution of the value of his or her property to the extent of depriving it of all economically viable uses. *Midnight Sessions, Ltd. v. City of Philadelphia*, 945 F.2d 667, 676–677 (3rd Cir.1991), *cert. denied*, 503 U.S. 984, 112 S.Ct. 1668, 118 L.Ed.2d 389 (1992).

■ Under these standards, we find that the Plaintiffs have not and cannot state a valid taking claim. Prior to the adoption of the Township Zoning Ordinance in 1970, the Plaintiffs were engaged in the cabinet-making business. On the basis of the record we have before us, it is clear that the Plaintiffs could continue in this enterprise, should they so desire. Furthermore, the order issued by Judge Stengel, upon which much of the taking claim is based, expressly states that the Plaintiffs are not enjoined from making use of the property in ways permitted in an R–2 zoning district, or for which zoning approval has been approved. *See* King Dep. Exhibit 17. The Plaintiffs have not been deprived of all, or even substantially all, of the property's viable economic uses. Accordingly, they do not have a viable taking claim pursuant to the Fifth and Fourteenth Amendments, and the Defendants are entitled to summary judgment on this claim as a matter of law.

### 4. Plaintiffs' § 1985(3) Conspiracy Claims

The Plaintiffs § 1985(3) claims echo the taking, equal protection, due process, punitive damages, and injunctive relief causes of action, casting them in the light of a conspiracy. *See* Complaint ¶¶ 54–60. The Plaintiffs' Brief in Opposition seems to misinterpret the standard under which a summary judgment motion is reviewed. Many of the assertions made in the Plaintiffs' Brief in Opposition regarding their § 1985(3) cause of action might be appropriate in opposing a motion to dismiss, but they do not adequately respond to a motion for summary judgment.[7]

Section 1985(3) states:

If two or more persons in any State or Territory conspire ... for the purpose of depriving, either directly or indirectly, any

---

7. For example, on page 24 of their Brief in Opposition, the Plaintiffs state, "Paragraph 24 [of the Complaint] makes clear that the Kings were abused and discriminated against because of their [sic] ethnic, cultural, religious and other unlawful reasons." However, Paragraph 24 of the Complaint merely states, "Some of the neighbors [who, other than Ms. Lantz, are not named Defendants] have combined together with the Township Defendants to form a conspiracy, the purpose of which is to harass the Kings, to deny the Kings their constitutional rights, and to shut the Kings down. Not acting in furtherance of any legitimate governmental purpose, they deliberately abused their official power to discriminate against them for ethnic, cultural, religious and other unlawful reasons." An unsupported allegation cannot be supported by reference to another unsupported allegation. This tactic, much like Macbeth's well known description of life, is "but a walking shadow, ... full of sound and fury, signifying nothing." William Shakespeare, *Macbeth* act 5, sc. 5.

person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; ... the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. § 1985(3).

■ To show a cause of action under this statute, the Plaintiffs must show: (1) a conspiracy, (2) to deny them personally, or as members of a protected class, of equal protection of the laws or of equal privileges and immunities under the law, (3) some act in furtherance of this conspiracy, and (4) some personal injury resulting from the conspiracy. *See Isajewicz v. Bucks County Dept. Of Communications*, 851 F.Supp. 161 (E.D.Pa. 1994). Having compared the Plaintiffs' Brief in Opposition with the Complaint, it is unclear whether the Plaintiffs are alleging a conspiracy against them personally or against them as members of a protected class. Because of this ambiguity, we will address both possible arguments.

### a. Conspiracy Against the Plaintiffs Personally

The first essential element of the Plaintiffs' claim that they, personally, were the targets of a discriminatory conspiracy, is proof of conspiracy itself. The Plaintiffs have, at various times alleged conspiracies involving: (1) several of the Township Defendants; (2) multiple Township Defendants and Defendant Lantz; (3) multiple Township Defendants and "unnamed neighbors"; and (4) multiple Township Defendants, Defendant Lantz, and various "unnamed neighbors."

■ Whichever incarnation of the alleged conspiracy we may consider, we inevitably come to the same conclusion. The Plaintiffs have been unable to identify any evidence showing the existence of a conspiracy. The closest the record comes is to show that various Township Defendants worked together in their official capacities and that Defen-

dant Lantz testified at a hearing in which the Township was trying to secure the Plaintiffs' compliance with zoning regulations. Such conduct does not amount to a conspiracy in any sense contemplated by § 1985(3).

### b. Conspiracy Against the Plaintiffs as Members of a Protected Class

The Plaintiffs continue to assert that they were subjected to conspiratorial mistreatment because they are members of the Amish faith. The Supreme Court has held that § 1985(3) requires the presence of a conspiracy motivated by some racial, or perhaps otherwise class-based animus to deprive a person or group of persons of a constitutionally guaranteed protection. *Griffin v. Breckenridge*, 403 U.S. 88, 102, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971). The Third Circuit Court of Appeals has expanded the scope of § 1985(3) to prohibit discrimination against the disabled, *see Lake v. Arnold*, 112 F.3d 682, 688 (3rd Cir.1997), and at least one court within this District has said that § 1985(3) would apply in the context of gender-based discrimination. *See Palace v. Deaver*, 838 F.Supp. 1016, 1020 (E.D.Pa.1993).

■ Although no court within this Circuit has applied § 1985(3) in the context of anti-Amish religious discrimination, we believe that such protection would likely be appropriate in some cases. However, we need not reach this conclusion in the case before us, as the Plaintiffs have not identified any evidence which even hints that the actions of the Township Defendants were motivated by anti-Amish animus. The Plaintiffs themselves have acknowledged that they are unaware of any evidence that the Township Defendants have discriminated against any other Amish-owned business. Plaintiffs' Answers to Township Defendants' Interrogatory No. 14.

We will grant the Township Defendants' motion to dismiss the Plaintiffs' 1985(3) claims because the Plaintiffs have been unable to identify any portion of the record which might indicate the existence of a conspiracy against them or any discriminatory intent on the part of the Township Defendants against the Amish faith.

### 5. Plaintiffs' Claim under the Pennsylvania Doctrine of Natural Expansion of a Nonconforming Use

In their Complaint, the Plaintiffs state,

Township Defendants, by imposing sanctions upon the Kings have infringed and deprived them of the following federal and state constitutional rights: ... the doctrine of natural expansion of non-conforming uses as enunciated by Pennsylvania decisional law.

Complaint ¶ 42. The Plaintiffs fail to expand upon this claim in their Brief in Opposition, nor do the Defendants respond specifically to this claim, other than to request summary judgment on all claims asserted by the Plaintiffs. Nevertheless, because this claim appears in the Complaint and has not been withdrawn, we will address it now.

■ The Supreme Court of Pennsylvania has described the doctrine of natural expansion of a nonconforming use:

[O]nce it has been determined that a nonconforming use is in existence, an overly technical assessment of that use cannot be utilized to stunt its natural development and growth. As Mr. Justice Musmanno aptly stated, "an ordinance which would allow the housing of a baby elephant cannot evict the animal when it has grown up, since it is generally known that a baby elephant eventually becomes a big elephant."

*Township of Chartiers v. William H. Martin, Inc.*, 518 Pa. 181, 542 A.2d 985, 988–989 (Pa.1988) (internal citation omitted).

■ Under this rule, a nonconforming use cannot be limited to the precise magnitude which existed on the date the applicable zoning ordinance was passed. *Cheswick Borough v. Bechman*, 352 Pa. 79, 42 A.2d 60, 62 (Pa.1945). However, it would be permissible for a municipal authority to restrict the use of property operating under the protection of the preexisting nonconforming use doctrine to that particular nonconforming use. *Chartiers*, 542 A.2d at 989. In other words, if a property owner were operating a landfill on property that was subsequently zoned residential, a municipality may not generally interfere with the owner's right to continue using the property as a landfill or to expand that use upon the property owned at the time the zoning ordinance was passed. Nevertheless, the municipality may refuse to allow the landowner to build a racetrack on the land, as this would involve more than a mere expansion of the landfill business.

■ From the record it appears that the Plaintiffs were operating a cabinet-making business at the time the Township adopted its first zoning ordinance. Under that ordinance, the Plaintiffs' property was zoned R–2 residential. At some point thereafter, the Plaintiffs became involved in manufacturing and selling furniture and storage sheds.

The record shows that the Plaintiffs have filed two requests for special exceptions to the zoning ordinance. In 1975 or 1976, the Plaintiffs requested a special exception allowing them to build an addition to the mill building. Their request was denied, although some construction had been started before the petition was filed. The denial was affirmed by the Court of Common Pleas, and was the subject of various enforcement actions. In the Fall of 1995, the Plaintiffs requested another special exception. However, the Plaintiffs did not attend a scheduled hearing and took no steps to pursue the petition.

We find that the Plaintiffs' expansion of the business to include the manufacture and sale of furniture and storage sheds does not fall under the protection of the Pennsylvania doctrine of natural expansion of a nonconforming use. The sale of dining room sets, upholstered furniture, etc. is very different from the business of cabinet making. The manufacture of storage sheds is similarly distinguishable.

■ We also find that the Plaintiffs' requests for special exceptions to zoning laws were made in connection with the furniture and storage shed businesses, and do not qualify as preexisting uses. Therefore, the decision of the zoning board to deny the request made in the mid–1970s did not violate the doctrine of natural expansion of a nonconforming use. Furthermore, there was no decision reached by the Zoning Hearing Board in 1995. The Plaintiffs withdrew that

petition by their own actions. Therefore, no misconduct can be imputed to the Zoning Hearing Board in connection with the Plaintiffs' 1995 special exception request.

The several petitions for contempt proceedings filed by the Township against the Plaintiffs were all filed in connection with violations of orders issued by state courts, and were occasioned by the Plaintiffs' own failure to comply with these orders. Under these circumstances, we find that the Plaintiffs' cause of action based upon the Pennsylvania doctrine of natural expansion of a nonconforming use must be dismissed.

### 6. Plaintiffs' Request for Injunctive Relief

The Plaintiffs' request for injunctive relief is apparently based upon the permanent injunction granted by Judge Stengel and the enforcement notice of June 6, 1995. The Township Defendants respond that both the injunction and the enforcement notice are legally proper, and that the Plaintiffs' current complaints are barred by the doctrines of collateral estoppel and res judicata. The Township Defendants also point out that the Plaintiffs are currently appealing the injunction to the Commonwealth Court, and argue that we should refrain from intervening in that matter.

■ There are four elements which must generally be satisfied in order to merit injunctive relief in a case involving the use of property: (1) the party moving for injunctive relief will suffer irreparable harm if the injunctive relief is not granted, (2) the moving party is ultimately likely to prevail on the merits of the case, (3) the harm likely to be inflicted upon the moving party if the relief is not granted outweighs any harm that is likely to be inflicted upon the non-moving party if the injunctive relief is awarded, and (4) the grant of injunctive relief will not negatively impact the public interest. *See e.g., Joseph v. Henry,* 958 F.Supp. 238, 243 (D.V.I.1997). The Plaintiffs have alleged that they have suffered irreparable harm, that they have no adequate remedy at law, and that they have suffered monetary damages. Complaint ¶¶ 46–48, 58. However, the evidence does not support these allegations.

■ The Plaintiffs have failed to show that they will suffer irreparable harm if injunctive relief is not granted in this case. First of all, it is not clear that the Plaintiffs stopped conducting business after the injunction was issued. *See* King Dep. at 12–14. In addition, we note that Mr. King has testified that he is retired. *Id.* at 8–9. Although these seem to be contradictory conditions, we find that either would support a finding in the Defendants' favor. Either Mr. King is retired, and therefore the injunction prohibiting him from conducting certain business on his property is of no import, or he is not retired, and the injunction has not prevented him from continuing to operate his business in some capacity.

The Plaintiffs are also unlikely to achieve success based upon the merit of their claims. Indeed, this Opinion is accompanied by an Order awarding summary judgment to the Defendants in this case. Therefore, the Plaintiffs have not met the second requirement for injunctive relief.

The Plaintiffs have also failed to show that the harm likely to be inflicted upon them if the relief is not granted outweighs any harm that likely to be inflicted upon the Defendants if the injunctive relief were awarded. Just the opposite seems likely in this case. By granting the Plaintiffs injunctive relief, we would be giving them permission to engage in business from which Mr. King has retired, and which seems to be continuing to some extent regardless of the order issued by Judge Stengel. Any benefit which the Plaintiffs would derive from such a decision is far outweighed by the harm which would be inflicted upon the Township. If we were to grant the Plaintiffs' request, the Township would be hindered in enforcing its own municipal ordinances. We will not contradict decisions issued by local state court judges and usurp the function of the Zoning Hearing Board by granting the Plaintiffs the relief they request.

Finally, the Plaintiffs have presented no evidence that the grant of injunctive relief will not negatively impact the public interest. Indeed, just the opposite is likely. If we were to contradict local state court judges

and interfere with the Township's ability to draft and enforce its own zoning regulations, we would be doing a great disservice to the citizens of Lancaster County.

The Plaintiffs have failed to establish any of the elements necessary to justify the granting of injunctive relief. Accordingly, we will grant summary judgment in favor of the Defendants with respect to this claim.

### 7. Plaintiffs' Punitive Damages Claim

The Plaintiffs argue that they are entitled to punitive damages because the acts of the Township Defendants were intentional, malicious, outrageous, in bad faith, and conducted with evil motive. Complaint ¶¶ 49, 57. The Township Defendants counter that the Township, as well as all individual Defendants in their official capacities, are immune from punitive damages. The Township Defendants also argue that there is no evidence which could conceivably support an award of punitive damages against them in their individual capacities.

The Plaintiffs acknowledge that punitive damages are unavailable against Township with regard to the § 1983 claims. *See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 263–264, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981). However, the Plaintiffs argue, such damages would be available against the Township with regard to the § 1981 claim. Because we have dismissed this claim against all of the Defendants, we need not consider this contention. The Plaintiffs also admit that punitive damages are will not be available against the individual Township Defendants in their official capacities, *see Agresta v. Goode*, 797 F.Supp. 399 (E.D.Pa.1992), but argue that such damages will be available against the individual Township Defendants in their individual capacities. We concur that such damages are not barred as a matter of law.

■ As a general rule, punitive damages are recoverable in civil rights cases when an individual defendant has acted with malice or with knowledge that he or she was violating a person's constitutional rights. *See Fact Concerts*, 453 U.S. at 266–267, 101 S.Ct. 2748. The Third Circuit has held that "a jury may be permitted to assess punitive damages in an action under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Savarese v. Agriss*, 883 F.2d 1194, 1204 (3rd Cir.1989), *citing Smith v. Wade*, 461 U.S. 30, 56, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983).

■ The Plaintiffs argue that the Defendants policy of strict surveillance of the Plaintiffs' property was done with an evil motive and a reckless indifference to the Plaintiffs' constitutional rights. There are only two types of evidence in the record to which we believe the Plaintiffs might be referring.

The first evidence of such "surveillance" comes from a letter written by William L. Groeber, an Environmental Protection Specialist apparently employed by the Environmental Protection Agency.[8] Plaintiffs' Exhibit L. This letter states, "a strict surveillance program to document a smoke problem was conducted. Weekly observations did not yield any problems or violations." This environmental monitoring, conducted by an environmental professional from an independent governmental agency, does not implicate any of the Plaintiffs' constitutional rights. By no stretch of the imagination can it be called malicious, callous, or reckless. It did not invade the Plaintiffs' privacy in any impermissible way or have any motive other than to assure compliance with environmental regulations.

The second type of evidence upon which the Plaintiffs may base their claim of "strict surveillance" comes in the form of photographs which were taken of the Plaintiffs' property in connection with the zoning violation hearings. Defendant Lantz took approximately 28 photographs documenting zoning violations on the Plaintiffs' property

---

**8.** Neither Mr. Groeber, nor Mr. Grove (to whom the letter was addressed) have been named as defendants in this case. The only connection between the letter and the Defendants is a notation indicating that the East Lampeter Township Supervisors received a copy of the letter detailing the Plaintiffs' compliance with environmental regulations.

over the span of 14 months. Defendant Latschar took approximately 42 photographs documenting similar conditions over the span of almost 21 months. None of these photographs depict the Plaintiffs or any other people. Nor do they include scenes of the interior of the Plaintiffs' home. All of the photographs were taken from public roadways and focus on the condition of the Plaintiffs' business property. There is no evidence in these photographs or otherwise that any of the Defendants were trying to invade the Plaintiffs' privacy or subject them to constant surveillance.

There are simply no facts of record which could conceivably support a claim for punitive damages against any of the individual Defendants in their individual capacities. Accordingly, we find that the Township Defendants are entitled to summary judgment on the Plaintiffs' claims for punitive damages.

## 8. Affirmative Defenses of the Individual Township Defendants in their Individual Capacities

The Plaintiffs have sued the individual Township Defendants in both their official and individual capacities. Because the suit against these Defendants in their official capacities is essentially a suit against the Township, see *Kentucky v. Graham,* 473 U.S. 159, 169 n. 14, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985); *Williams v. Lower Merion Township,* No. 94–CV–6863, 1995 WL 461246 at *3 (E.D.Pa. Aug.2, 1995), we will consider the official capacity affirmative defenses in the next section of this Opinion, which deals with the Township's affirmative defenses. This section of the Opinion will focus solely on the affirmative defenses available to the individual Township Defendants in their individual capacities.

The Defendants argue that municipal councils acting in a legislative capacity are absolutely immune from suit under § 1983. *Aitchison v. Raffiani,* 708 F.2d 96, 99 (3rd Cir.1983). The Plaintiffs respond that the actions complained of in this suit were not taken in a legislative capacity, and that administrative actions taken by a municipal official are not subject to absolute immunity. *Carver v. Foerster,* 102 F.3d 96, 100–101 (3rd

Cir.1996). We will not decide whether the relevant actions are most accurately characterized as legislative or administrative—given the broad range of conduct complained of, they are probably a mix of both. We need not engage in the complex sorting process required under the absolute immunity affirmative defense, because we find that the individual Township Defendants are entitled to qualified immunity for their actions.

■ The Supreme Court has held that government officials performing discretionary functions are shielded from exposure to damages unless their conduct violated a clearly established statutory or constitutional right of which a reasonable person would have known. *Harlow v. Fitzgerald,* 457 U.S. 800, 817–818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Although the Plaintiffs have repeatedly alleged that the individual Township Defendants did just that, there is no evidence in the record which supports these allegations.

Defendants Shertzer, Eberly, Sollenberger, Bare, and Landis were all members of the Board of Supervisors at the time the Plaintiffs filed the Complaint. However, nowhere in the Complaint do the Plaintiffs articulate how these individuals violated the Plaintiffs' rights in a manner which would make these defendants individually liable. Nor did Mr. King identify any such violations in his deposition.

Defendant Hutchison is the Township Manager of East Lampeter Township. Again, Plaintiffs have failed to identify any facts of record which establish that Defendant Hutchison violated the Plaintiffs' statutory or constitutional rights.

Defendants Hendershott, Latschar, and Schmitz are members of the East Lampeter Zoning Hearing Board. We note that the Plaintiffs have not appeared before the Board since 1975. In addition, the Plaintiffs have failed to identify any facts of record which would indicate that these Defendants may be subject to liability in their individual capacities. The Plaintiffs argue that Defendant Latschar should not receive qualified immunity because he allegedly conducted an unlawful search of the Plaintiffs' property,

solicited the testimony of Defendant Lantz against the Plaintiffs, coordinated the surveillance of the Plaintiffs' property, failed to consult zoning regulations before citing the Plaintiffs in 1995, and failed to consult a township solicitor before citing the Plaintiffs. We find that there is no evidence on the record that Defendant Latschar ever conducted an unlawful search of the Plaintiffs' property. In addition, the record clearly shows that Defendant Lantz volunteered to testify against the Plaintiffs and took pictures on her own initiative. The record also shows that Defendant Latschar "looked at the [zoning] ordinance every day" when he was the zoning officer, Deposition of Russell E. Latschar taken May 14, 1998 ("Latschar Dep.") at 46–47, although he didn't remember exactly when he looked at it before citing the Plaintiffs. *Id.* at 47. Mr. Latschar also testified that he did consult the ordinance regarding the type of sign the Plaintiffs were allowed to post on their property. *Id.* at 57. Finally, we note that there was no requirement that Defendant Latschar consult a township solicitor before issuing a citation.

Defendant Young is the current Zoning Officer and former Secretary of the Zoning Hearing Board. Once again, the Plaintiffs have failed to identify any facts in the record which would support their allegation that Defendant Young violated their statutory or constitutional rights.

For the reasons stated above, we find that the individual Township Defendants are entitled to qualified immunity in their individual capacities, as the Plaintiffs have failed to introduce any evidence that these Defendants knew or should have known that they were violating the Plaintiffs' rights. Accordingly, even if we had not granted the Township Defendants' summary judgment motion on its merits, we would dismiss the individual capacity claims against the Township Defendants because they are entitled to qualified immunity.

## 9. Affirmative Defenses of the Township, Zoning Hearing Board, and Individual Township Defendants in their Official Capacities

The Township Defendants allege that the claims against the Township, Zoning Hearing Board, and individual Defendants in their official capacities should be dismissed because there is no evidence of a custom or policy which resulted in a violation of the Plaintiffs' civil rights. The Plaintiffs respond that "the Defendants had a policy of harassment and intimidation of the plaintiffs in violation of their constitutional rights." Plaintiffs' Brief in Opposition at 51. As evidence of this policy, the Plaintiffs cite the alleged "policy of strict surveillance." *Id.*

■■■ A civil rights complaint against a municipality or its agency must allege: (1) the existence of a custom or policy of a municipality which is of such long standing to have the force of law, and (2) that one of the municipality's employees violated the plaintiff's civil rights while acting pursuant to that policy or custom. *See Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Liability of a municipal defendant cannot be established simply upon a respondeat superior theory for claims filed pursuant to §§ 1981 and 1983. *See Id.; Jett v. Dallas Independent Sch. Dist.,* 491 U.S. 701, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989). In a case such as this one, each Defendant must be shown to have been personally involved in the events or occurrences giving rise to the claim. *See Hampton v. Holmesburg Prison Officials,* 546 F.2d 1077 (3rd Cir.1976).

■ The only alleged illegal policy which the Plaintiffs identify in the pleadings is the alleged "policy of surveillance." We have already found that the circumstances under which pictures of the Plaintiffs' property were taken were not illegal. In addition, the Plaintiffs have failed to supply any evidence from which an impermissible motive may be inferred. On the contrary, the evidence clearly establishes that all such pictures were taken in connection with the zoning violations present on the property, and were taken in a manner calculated to minimize any intrusion into the Plaintiffs' privacy.

The Plaintiffs have failed to produce any evidence which may be interpreted to show that the Defendant Township had a policy under which the Plaintiffs' civil rights were

violated. In addition, the Plaintiffs have failed to show that any of the individual Defendants did anything in their official capacities which might be viewed as a constitutional violation. Therefore, even if we had not granted the Township Defendants' summary judgment motion on its merits, we would dismiss the claims against the Township, Zoning Hearing Board, and individual Defendants in their official capacities, because the Plaintiffs have failed to produce any evidence of an unconstitutional policy or custom in the Township.

## F. Remaining Issues Raised in the Plaintiffs' Motion

The Plaintiffs advance seventeen arguments which they believe entitle them to summary judgment on some or all of the claims asserted in the Complaint. We will briefly address each of these arguments.

First, the Plaintiffs argue that the decree issued by Judge Stengel was unconstitutional because it refused to address the Plaintiffs' constitutional claims. We have found that the Plaintiffs' constitutional rights were not violated by Judge Stengel's order. See discussion supra Part III.E.3.c. Therefore, we must reject this argument.

The Plaintiffs next argue that the enforcement notice of June 6, 1995 is unconstitutional because it violated the Plaintiffs' corporate charter and denied the Plaintiffs the right to engage in a constitutionally protected nonconforming use. We have already found that the nonconforming use argument must fail. See discussion supra Part III.E.5.

The Plaintiffs' third argument alleges that the enforcement notice of August 30, 1990 is unconstitutionally vague. We have carefully reviewed this notice, Plaintiffs' Exhibit F, and we find that the violations and appellate procedure were sufficiently described by the notice. The only case cited by the Plaintiffs is tangentially related at best, as it deals with unconstitutionally vague criminal loitering statutes. We find that the zoning ordinance provision stating "no outside storage will be permitted which would detract from the neighborhood" is rationally related to a legitimate municipal interest. In addition, the Plaintiffs cannot complain about the applica-

tion of this statute to a business operation which is itself in violation of applicable zoning regulations and court orders. Accordingly, we will deny this portion of the Plaintiffs' motion.

The Plaintiffs' fourth argument alleges that the Defendants never established that the Plaintiffs substituted any impermissible nonconforming use in violation of Art. V § 502(3) of the Township Zoning Ordinance. We have previously found that the Plaintiffs are not entitled to protection of the Pennsylvania doctrine of natural expansion of a nonconforming use. See discussion supra Part III.E.5. In addition, we find that the Township's decision to enforce its zoning ordinance against the Plaintiffs was neither arbitrary nor irrational. See DeBlasio v. Zoning Bd. of Adjustment, 53 F.3d 592 (3rd Cir.), cert. denied, 516 U.S. 937, 116 S.Ct. 352, 133 L.Ed.2d 247 (1995).

The Plaintiffs' fifth argument for summary judgment alleges that § 1813 of the Zoning Ordinance is unconstitutionally restrictive because it "emasculates a permissible nonconforming use." Plaintiffs' Motion ¶ 5. On the contrary, this regulation is merely intended to engender safe and orderly conditions in resale establishments. We have previously found that the Plaintiffs were not engaging in a permissible nonconforming use. See discussion supra Part III.E.5. Therefore, this argument is moot.

The Plaintiffs' sixth argument for summary judgment alleges that § 1813 of the Zoning Ordinance is unconstitutional because it mandates a finding of a violation without a hearing. There are two problems with this argument. First, § 1813 mandates no such thing. This section relates to the sale of goods, merchandise, and products related to industrial uses, and makes no reference to enforcement or the manner in which a violation must be established. Second, § 2008, which does relate to enforcement remedies, provides adequate procedural protections to those charged with failure to comply with zoning regulations. For these two reasons, the Plaintiffs' sixth argument in favor of summary judgment must fail.

The Plaintiffs' seventh argument alleges that the issuance of the 1995 citation was an unconstitutional encroachment upon the Plaintiffs' property rights. We have considered and rejected this argument previously. *See* discussion *supra* Parts III.E.3.a and III.E.3.c. The Plaintiffs also argue that Defendant Latschar exercised his authority in an arbitrary and abusive manner. However, there is no evidence on the record which even remotely supports this assertion. Therefore, the Plaintiffs' seventh argument for summary judgment must be rejected.

The Plaintiffs' eighth argument for summary judgment alleges that the citation issued on the basis of an oversized sign was unconstitutional, because § 1604(1)(a) of the Zoning Ordinance is impermissibly vague and imprecise. The Plaintiffs have not attached the portions of the Zoning Ordinance to which § 1604 refers, and therefore, we cannot ascertain whether the regulation is valid or not. However, nothing on the face of § 1604 itself is sufficiently vague to justify the Plaintiffs' argument.

The Plaintiffs' ninth argument alleges that Defendant Latschar and his wife conspired to deprive the Plaintiffs of their constitutional rights to due process and equal protection. We have previously discussed the merits of the Plaintiffs' conspiracy claims. *See* discussion *supra* Part III.E.4. In addition, we note that Mrs. Latschar has not been named as a defendant in this suit. Therefore, this argument must be dismissed.

The Plaintiffs' tenth argument states that the Defendants engaged in illegal picture taking of the Plaintiffs' property. We have previously considered and rejected this claim as it applies to Defendants Lantz and Latschar. *See* discussion *supra* Parts III.D.1 and III.E.7, respectively. There is no evidence that any of the other Defendants were involved in taking pictures of the Plaintiffs' property.

The Plaintiffs' eleventh argument alleges that the Defendants unlawfully confiscated the Plaintiffs' personal property in 1992. We have addressed this argument in Parts III.B.1 and III.E.3.c of this Opinion, and we reaffirm our rejection of this position.

The twelfth argument advanced by the Plaintiffs in favor of summary judgment states that the Defendants have engaged in a pattern of harassment and intimidation against the Plaintiffs for many years. We find that this perceived "harassment" was at all times occasioned by the Plaintiffs' own failure to comply with Township zoning regulations and orders issued by the state courts. There is no evidence that the Defendants were ever motivated by any discriminatory animus against the Plaintiffs. *See* discussion *supra* Parts III.E.2 and III.E.3.b. Therefore, the Plaintiffs are not entitled to summary judgment on the basis of this argument.

The Plaintiffs' thirteenth argument alleges that the 1992 seizure violated the Fourteenth Amendment prohibition against unreasonable searches and seizures. We have already considered and rejected this argument. *See* discussion *supra* Part III.E.3.c.

The fourteenth argument advanced by the Plaintiffs is that a videotape recording of activities upon the Plaintiffs' property, prepared by Detective Ronald Savage, constitutes an unreasonable search and seizure. We cannot reach the merits of this claim for two reasons. First, the Plaintiffs have failed to submit the videotape, or provide any meaningful description of its contents or the circumstances and purpose for which it was created. Second, the Plaintiffs have failed to name Detective Savage as a defendant in this suit. We are reluctant to award summary judgment against an individual who has not been sued.

The fifteenth argument advanced by the Plaintiffs concerns the conduct of Ivan Miller. We have denied the Plaintiffs' motion to add Mr. Miller as a defendant. The explanation provided in that portion of this Opinion, *see* discussion *supra* Part III.B, prompts us to reject this argument as well.

The Plaintiffs' sixteenth argument for summary judgment alleges that Defendant Latschar and James Nolt conducted an unlawful search of the Plaintiffs' property in 1991. We have denied the Plaintiffs' motion to add Mr. Nolt as a defendant in this case. The explanation provided in that portion of this Opinion, *see* discussion *supra* Part III.B,

prompts us to reject this argument as it applies to Mr. Nolt. In addition, we find that the Plaintiffs have introduced no evidence which would support a finding that Defendant Latschar conducted an illegal search upon their property.

■ The Plaintiffs' final argument for summary judgment alleges that various court orders denying the Plaintiffs the right to maintain unlicensed vehicles on the property were unconstitutional. The Plaintiffs argue that there is no rational basis for distinguishing between licensed and unlicensed vehicles in the Township ordinance. We find that such a rational basis does exist. We note that other courts have found similar "junk car" regulations to be constitutional because they are not wholly arbitrary. *See e.g., Price v. City of Junction*, 711 F.2d 582 (5th Cir. 1983). In addition, the statute does not authorize warrantless entry onto property or seizure of property without notice. Accordingly, we must reject the Plaintiffs' final argument in favor of summary judgment.

## IV. CONCLUSION

We have denied the Defendants' joint motion to strike, and have considered the Plaintiffs' motion for summary judgment and brief in opposition to the Defendants' motions for summary judgment. Although these motions were untimely, we did not wish to prejudice the Plaintiffs because of their counsel's failure to file these pleadings in a timely manner.

We have denied the Plaintiffs' motion for leave to amend the complaint by adding two additional defendants. We based this denial upon our findings that (1) no conceivable cause of action could exist against the two individuals; (2) the Plaintiffs could have added the two individuals in the original or First Amended Complaint; and (3) the statute of limitations would bar the claims the Plaintiffs were seeking to bring against the two individuals.

We next considered the summary judgment motion of Defendant Lantz. We found that she was protected by the Noerr–Pennington doctrine, and that even if she were not, the Plaintiffs had failed to introduce any

evidence that she conspired with anyone else to deny the Plaintiffs any statutory or constitutional right. We also found that the Plaintiffs had not introduced any evidence which would support an award of punitive damages against Defendant Lantz. On the basis of these findings, we found that this Defendant was entitled to summary judgment on all claims which had been brought against her.

We then addressed the Township Defendants' motion for summary judgment and found that it should be granted. We broke our findings with respect to this motion into nine sections. First, we found that the Plaintiffs' civil rights claims against the Township Defendants, with the exception of Defendant Latschar and the Township itself, were barred by the applicable statute of limitations, and that the taking claim was also barred by the statute of limitations. We also pointed out that no statute of limitations bar existed with respect to the Plaintiffs' request for injunctive relief.

Second, we found that the Plaintiffs had not stated a valid claim under .42 U.S.C. § 1981 because they had not proven that they were members of a protected racial or ethnic class and because § 1981 does not protect against religious discrimination. We also found that, apart from this problem, the Plaintiffs had failed to introduce any substantive evidence that would support a claim that a § 1981 violation had occurred.

Third, we found that the Plaintiffs had not stated a valid claim under 42 U.S.C. § 1983. We explained that the Plaintiffs had failed to provide any evidence of a violation of due process under either the property interest or liberty interest theories. We also found that the Plaintiffs had failed to establish any potential equal protection claim because there was no evidence that the Township was ever motivated by religious animus against the Plaintiffs or against the Amish generally. We then found that the Plaintiffs' taking claim must be dismissed because the Plaintiffs had failed to introduce any evidence of damages and because they had not been deprived of all economically viable use of their land.

Fourth, we found that the Plaintiffs had failed to provide any evidence which would

support their 42 U.S.C. § 1985(3) claim. The record does not even hint that the Defendants were conspiring together against the Plaintiffs or that the Defendants collectively harbored any anti-Amish animus.

Fifth, we dismissed the claim brought by the Plaintiffs under the Pennsylvania doctrine of natural expansion of a nonconforming use. In doing so, we found that the Plaintiffs' wholesale furniture and custom storage shed businesses were outside the scope of protection provided by the state law, as the original nonconforming use involved a cabinet making business. We also found that, with the exception of a request which was lawfully denied in the mid 1970s, the Plaintiffs had failed to pursue the option of obtaining a special exception from the Zoning Hearing Board.

Sixth, we denied the Plaintiffs' request for injunctive relief. We found that the Plaintiffs had failed to show: (1) that they would suffer irreparable harm if the injunctive relief were not granted; (2) that they would ultimately be likely to prevail based upon the merits; (3) that the harm to the Defendants which would be caused by granting the relief would be outweighed by the harm the Plaintiffs would suffer injunctive relief were not granted; and (4) that the grant of injunctive relief would not negatively impact the public interest.

Seventh, we found that there was no evidence in the record which would entitle the Plaintiffs to punitive damages. Specifically, we found that there was no reason to believe that the Defendants were motivated by any evil motive or intent, and that there was no evidence that the Defendants acted recklessly or with callous indifference to the Plaintiffs' federally protected rights.

Eighth, we found that the individual Township Defendants were entitled to qualified immunity in their individual capacities because the Plaintiffs failed to show that any of the individual Defendants did anything in their individual capacities which might be viewed as a constitutional violation. We also found that the Plaintiffs failed to introduce any evidence that these Defendants knew or should have known that they were violating the Plaintiffs' rights.

Ninth, we found that the claims against the Township, Zoning Hearing Board, and individual Defendants in their official capacities should be dismissed because there was no evidence that any of the individual Defendants did anything in their official capacities which might be viewed as a constitutional violation. We also found that the Plaintiffs had not produced any evidence of a Township custom or policy which resulted in a violation of their civil rights. On the basis of the above findings, we found that the Township Defendants were entitled to summary judgment on all of the Plaintiffs' claims.

After granting the Township Defendants' motion for summary judgment, we turned to the Plaintiffs' motion for summary judgment. We considered each of the seventeen arguments advanced by the Plaintiffs, and found, individually, that none of these arguments would entitle the Plaintiffs to the entry of summary judgment in their favor.

The evidence presented clearly demonstrates that the Plaintiffs have repeatedly and consciously violated zoning regulations and have ignored orders issued by the Court of Common Pleas and an agreement signed by Mr. King himself. We caution the Plaintiffs that not all judges show as much patience as the Court of Common Pleas has when their orders are ignored or blatantly violated. We sincerely hope that the parties will work together to resolve the concerns of the Plaintiffs and the Township in a manner that will be satisfactory to all. An appropriate Order follows.

## ORDER

**AND NOW,** this 13th day of August, 1998, upon consideration of the Township Defendants' Motion for Summary Judgment, filed May 8, 1998; Defendant Lantz's Motion for Summary Judgment, filed May 27, 1998; Plaintiffs' Motion for Summary Judgment, filed June 8, 1998; Plaintiffs' Brief in Opposition to Defendants' Motion for Summary Judgment and in Support of their Motion for Summary Judgment, filed June 11, 1998; Plaintiffs' Exhibits in Support of their Motion for Summary Judgment, filed June 16, 1998; Defendants' Joint Motion to Strike,

filed June 17, 1998; Plaintiffs' Motion to Strike Defendants' Joint Motion to Strike, filed June 22, 1998; Defendant Lantz's Reply to Plaintiffs' Motion for Summary Judgment and Opposition to Defendants' Motion for Summary Judgment, filed June 29, 1998; the Brief of Township Defendants in Opposition to Plaintiffs' Motion for Summary Judgment, filed June 29, 1998; Plaintiffs' Motion for Leave to Amend Complaint to Join Additional Parties, filed June 30, 1998; the Brief of Township Defendants in Opposition to Plaintiffs' Motion to Strike Defendants' Joint Motion to Strike, filed July 2, 1998; the Response of Township Defendants to Plaintiffs' Motion for Leave to Amend Complaint to Join Additional Parties, filed July 9, 1998; Plaintiffs' Supplemental Brief in Opposition to Defendants' Motion for Summary Judgment and in Support of their Motion for Summary Judgment, filed July 13, 1998; Plaintiffs' Supplemental Brief in Opposition to Defendants' Response to Plaintiffs' Motion for Leave to Amend Complaint to Join Additional Parties, filed July 20, 1998; Township Defendants' Motion to Strike Multiple Pleadings, filed July 22, 1998; and the Motion of Defendant Lantz to Join in the Response of Township Defendants to Plaintiffs' Motion for Leave to Amend Complaint, filed July 31, 1998, it is hereby **ORDERED** as follows:

1. The Defendants' Joint Motion to Strike, filed June 17, 1998, is **DENIED;**

2. The Plaintiffs' Motion for Leave to Amend Complaint to Join Additional Parties, filed June 30, 1998, is **DENIED;**

3. Defendant Lantz's Motion for Summary Judgment, filed May 27, 1998, is **GRANTED;**

4. The Township Defendants' Motion for Summary Judgment, filed May 8, 1998, is **GRANTED;**

5. The Plaintiffs' Motion for Summary Judgment, filed June 8, 1998, is **DENIED;**

6. Judgment is entered in favor of all Defendants and against Plaintiffs;

7. The parties in this matter are to bear their own costs, and this case is **CLOSED.**